David LARSEN and Patricia
Larsen, Appellants,

v.

CARLENE LANGFORD &
ASSOCIATES, INC.,
Appellee.

No. 10–99–122–CV.

Court of Appeals of Texas,
Waco.

March 7, 2001.

Emily G. Tobolowsky, Dallas, TX, for appellant.

Jack K. Smith, Smith Russell & Associates, Corsicana, TX, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

This case involves "as is" language found in documents utilized in a real estate transaction involving the sale of an historic home. David and Patricia Larsen, purchasers of the home, appeal the summary judgment granted to Carlene Langford & Associates, Inc. Because we conclude the "as is" language conclusively negates the element of causation that is essential for each of the Larsens' claims, we affirm the judgment.

### Factual & Procedural History

In 1996, David and Patricia Larsen began searching for real estate outside the Dallas area. David, a real estate licensee, had access to the Multiple Listing Service, a real estate database, where he found information regarding a house in Corsicana, Texas. The home was described as historic, built in 1913, with 6,400 square feet, a library in the master bedroom, the original chandelier in the hallway, and a seven-year-old pool with a hot tub. The

listing stated that the price of the home was $75,000 and that the home needed work. The seller of the house was Billi and Roland Barrera. Rose Lahon, a sales associate with Carlene Langford & Associates, Inc., had the listing on the property.

### The Purchase

After viewing a photo of the home and the listing information, David contacted Langford's office, identified himself as a real estate agent, and requested to see the home. During the first visit, no one from the Langford office accompanied the Larsens to the home. Then, after several visits, the Larsens entered into a residential earnest money contract with the Barreras to purchase the home for $65,000 through the assumption of the loan obligation of Barrera. Langford served as the seller's broker, and David acted on his and his wife's behalf as a real estate agent/sales person, by and through his then employer, Doc Blanchard Realty.

The Larsens, pursuant to a rental agreement, lived in the home for approximately two months after signing the real estate contract and before closing. The Larsens admit that they learned of many of the problems with the home while they lived there before closing. Additionally, the Larsens admit receiving the seller's disclosure form before closing and before signing the final inspection and disclosure form. David admits that he noticed the Barreras did not fill out some parts of the seller's disclosure form, however, he never requested that they complete the form.

### The Lawsuit

After closing, the Larsens determined that given the extent of the repair needed to the home and the instability of exterior brick walls, the home was economically

irreparable and presently not safe for occupancy. The Larsens sued Langford & Associates, Billi and Roland Barrera, and Horvath's House Moving & Leveling to recover losses arising out of their purchase of the Barrera home. Against Langford, the Larsens asserted claims of common-law fraud, statutory fraud under Section 27.01 of the Texas Business and Commerce Code, negligent misrepresentation, violations of the DTPA, and violations of the Real Estate License Act.[1] Langford filed both a traditional and a "no evidence" motion for summary judgment. The trial court granted Langford's motion for summary judgment on all claims. Then Langford filed a motion to sever, which was granted, and the Larsens' claims against Langford were severed from the initial lawsuit making Langford's summary judgment final.

### The Appeal

In their sole issue, the Larsens argue that the trial court erred in granting Langford's motion for summary judgment because: (1) Langford did not prove its defensive issues of waiver and release as a matter of law; (2) Langford failed to negate the Larsens' common law, statutory fraud, negligent misrepresentation and DTPA claims; or alternatively (3) the Larsens marshaled sufficient evidence to show genuine issues of material fact as to Langford's alleged commission of common law and statutory fraud, negligent misrepresentation, and violations of the DTPA.

### Standard of Review

■ The standard of review for a summary judgment is well established: (i) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and is entitled to

---

1. Larsen raised no complaint in this appeal about the summary judgment as to this ground of recovery.

summary judgment as a matter of law: (ii) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (iii) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (Tex.1952).

█ For a defendant to prevail on summary judgment, he must show there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's cause of action or establish each element of an affirmative defense as a matter of law. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990). "When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion." *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

### Claims Made—Elements

The Larsen's four claims against Langford are for common law fraud, statutory fraud, negligent misrepresentation, and violations of the DTPA.

### Common Law Fraud

█ To recover on an action for fraud, the Larsens must show that:

1. a material representation was made;
2. which was false;
3. which was known to be false when made or was made recklessly as a positive assertion without knowledge of its truth;
4. which was intended to be relied upon;
5. which was relied upon; and
6. which caused injury.

*Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex.1997).

### Statutory Fraud

█ The Larsens can establish a statutory fraud claim under section 27.01 of the Business and Commerce Code by showing:

1. a representation of a material fact;
2. which was false:
3. made to induce a person to enter a contract;
4. which was relied upon by that person in entering the contract; and
5. which caused injury.

*See Scott v. Sebree*, 986 S.W.2d 364, 371 (Tex.App.—Austin 1999, pet. denied); TEX. BUS. & COM.CODE ANN. § 27.01 (Vernon 1987). "The statutory cause of action differs from the common law only in that it does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages." *Id.* at 77. (See element three under common law fraud above).

### Negligent Misrepresentation

█ The Larsens also allege a claim for negligent misrepresentation. The elements of negligent misrepresentation are:

1. a defendant provides information in the course of his business, or in a transaction in which he has a pecuniary interest;
2. the information supplied is false;
3. the defendant did not exercise reasonable care or competence in obtaining or communicating the information;
4. the plaintiff justifiably relies on the information; and

5. the plaintiff suffers damages proximately caused by the reliance.

See *Steptoe v. Merrill True*, 38 S.W.3d 213 (Tex.App.—Houston [14th Dist.] 2001, n.w.h.); *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991). Unlike common law fraud, negligent misrepresentation does not require knowledge of the falsity or reckless disregard of the truth or falsity of the representation at the time it was made. *See Milestone Properties, Inc., v. Federated Metals Corp.*, 867 S.W.2d 113, 119 (Tex.App.—Austin 1993, no writ). To prevail on a claim for negligent misrepresentation, the Larsens must prove that Langford's misrepresentation was a proximate cause of their damages. *See Greenstein, Logan & Co. v. Burgess Mktg., Inc.*, 744 S.W.2d 170, 189 (Tex. App.—Waco 1987, writ denied). The components of proximate cause are (1) cause in fact and (2) forseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992).

### Violations of the DTPA

■■■ Lastly, the Larsens have also alleged various DTPA violations. Generally, to prevail on their DTPA claim, the Larsens must establish that Langford violated a specific provision of the Act and that such violation was a producing cause of their injury. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996); TEX. BUS. & COM.CODE ANN. § 17.46 (Vernon Pamp.2001). The elements of a DTPA action are:

1. the plaintiff is a consumer (a person who seeks or acquires goods or services by purchase or lease);
2. the defendant engaged in a false, misleading, or deceptive act (*laundry list* ); and
3. the act constituted a producing cause of the consumer's damages.

*Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 478 (Tex.1995).

■■■ The Larsens have alleged four laundry list violations as the second element listed above. These four violations are:

1) Failure to disclose. To prevail on a DTPA claim for failure to disclose, the Larsens must show the following:

a. a failure to disclose information concerning goods and services;

b. which was known at the time of the transaction;

c. which was intended to induce them into a transaction; and

d. that they would not have entered into the transaction if the information had been disclosed.

*See Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 448 (Tex.2000); TEX. BUS. & COM.CODE ANN. § 17.46(b)(23) (Vernon Pamp.2001);

2) A representation that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." TEX. BUS. & COM.CODE ANN. § 17.46(b)(5) (Vernon Pamp.2001);

3) A representation that "goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." TEX. BUS. & COM. CODE ANN. § 17.46(b)(7) (Vernon Pamp.2001); and

4) Knowingly making false or misleading statements of fact concerning the need for parts, replacement or repair service. TEX. BUS. & COM.CODE ANN. § 17.46(b)(13) (Vernon Pamp.2001).

However, the Texas Supreme court has stated that misrepresentations are actionable under the DTPA "so long as they are of a material fact and not merely 'puffing' or opinion." *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex.1980).

*The Documents*

There are two documents at issue in this cause.

### Contract to Purchase

The parties used a standard form earnest money contract for the transaction. The form was prepared by the Texas Real Estate Commission (TREC). The parties used TREC form no. 20–2. It was completed by the Larsens. In the earnest money contract, the Larsens contractually bound themselves to accept the house "in its present condition." The contract contained the following section:

PROPERTY CONDITION.

REQUIRED REPAIRS OR INSPECTIONS. (Check one box only):

[X] (1) Buyer accepts the Property in its present condition. Buyer shall pay for any repairs designated by a lender.

[ ](2) Buyer requires the completion of any repairs designated by a lender and the following repairs: .

[ ](3) Buyer requires the completion of any repairs designated by a lender and any repairs designated by Buyer pursuant to the attached Property Condition Addendum. Buyer shall pay for inspections, reinspections, reports and certificates.

We have previously held this to be an agreement to purchase the property "as is." *Fletcher v. Edwards,* 26 S.W.3d 66 (Tex.App.—Waco 2000, pet. ref'd); *See Smith v. Levine,* 911 S.W.2d 427, 431 (Tex. App.—San Antonio 1995, writ denied).

### Final Inspection and Disclosure form

Langford prepared another document to be signed by the Larsens at the closing. This document was the final inspection of property/disclosure form. The final inspection of property/disclosure form, which the Larsens also signed, included the following clauses:

I/We have been advised by the named Realtor/Real Estate Company to make any and all inspections of subject property either by myself or anyone that I wish to employ, such as a licensed real estate inspector.

I have made all inspections or have had an employee of my choice to make them for me. *I accept the property in its present condition* and am satisfied with all the inspections and any repairs that were required.

Broker and sales associates shall not be liable or responsible for any inspections or repairs pursuant to this Contract and Addendum even in event of a problem that has been overlooked by any or all parties involved in this transaction.

(emphasis added).

### Controlling Case Authority

In *Prudential,* the Texas Supreme Court addressed the issue of whether a buyer who agrees freely, and without fraudulent inducement, to purchase *commercial* real estate "as is," can recover damages from the seller when the property is later discovered not to be in as good a condition as the buyer originally believed when he inspected the property before the sale. *Prudential Ins. Co. of America v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 158 (Tex.1995). The buyer had inspected the building, but was not informed that the building contained a fireproofing material of which asbestos was a possible component. *Id.* at 159. The purchase agreement stated that the buyer was purchasing the building "as is," was not relying on any representations made by the seller, was relying on his own inspection of the building, and was taking the building without any express or implied warranties other

than warranties of title. *Id.* at 160. As the Court in *Prudential* states:

> The sole cause of a buyer's injury in such circumstances, by his own admission, is the buyer himself. He has agreed to take the full risk of determining the value of the purchase. He is not obligated to do so; he could insist instead that the seller assume part or all of that risk by obtaining warranties to the desired effect. If the seller is willing to give such assurances, however, he will ordinarily insist upon *additional* compensations. Rather than pay more, a buyer may choose to rely entirely upon his own determination of the condition and value of his purchase. In making this choice, he removes the possibility that the seller's conduct will cause him damage.

*Id.* at 161. Even though *Prudential* involved the sale of commercial property, we have previously held that the same analysis is applicable to an "as is" provision in a contract for the sale of residential property. *See Fletcher v. Edwards,* 26 S.W.3d 66 (Tex.App.—Waco 2000, pet. ref'd).

### Application

 The validity of an "as is" agreement is determined in light of the sophistication of the parties, the terms of the "as is" agreement, whether the "as is" clause is freely negotiated, whether it was an arm's length transaction, and whether there was a knowing misrepresentation or concealment of a known fact. *Prudential,* 896 S.W.2d at 160–162. When viewed in the light most favorable to the Larsens, the summary judgment evidence shows that Langford and the Larsens conducted the transaction at arm's length. Further, both Langford and the Larsens were similarly knowledgeable and sophisticated par-

ties in the real estate business.[2] Langford served as the seller's broker and Larsen acted on his own behalf as a real estate agent/sales person, by and through his then employer, Doc Blanchard Realty. Thus, the record supports the conclusion that the contract was negotiated by parties of equal bargaining strength in an arm's length transaction.

When the Larsens signed the real estate contract and the disclosure agreement, they were not represented by counsel. However, this fact is somewhat discounted because David Larsen by the nature of his occupation has training, experience and expertise in real estate transactions. Thus, like Langford, he was familiar with the documents involved and the legal consequences of each.

 Now, we must look at the terms of the agreement. Even though the terms of the "as is" agreements were not as specific as those in the contract in *Prudential,* this was not necessary as long as the contract leaves no doubt exactly what the Larsens agreed to. *See Prudential,* 896 S.W.2d at 161. In this case, the "as is" language is found in two separate documents. First of all, the "as is" language is found in the preprinted earnest money contract and second, the final inspection and disclosure form.

 By signing both agreements, the Larsens explicitly agreed that they would accept the property in its present condition without requiring any repairs by the seller, that they had made their own inspection and further relinquishing Langford (including its sales associates) of any liability for the repairs known or unknown by the seller. Courts are to assume that the parties intended every contractual provision to have some meaning. We must

---

**2.** Of course the Contract for Sale was with the Barreras. The record does not indicate that

they had any special knowledge, training or expertise in real estate matters.

presume that the parties contemplated, by the inclusion of these clauses in the documents which they both signed, that the Larsens were not relying on any statement by Langford regarding the condition of the property. *See Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 180 (Tex.1997). And because the Larsens made this agreement in a freely negotiated transaction, at arm's length, they are bound by their agreement that they were not relying on Langford's representations. The relevant contract provisions clearly and unambiguously demonstrated the Larsens' agreement to rely solely upon themselves, their own inspections or inspectors they chose.

Accordingly, we conclude that the agreements in this case satisfy the requirements set forth in *Prudential*. The "as is" clauses conclusively negate the reliance element which is essential to recovery on all the theories that the Larsens assert. In other words, Larsens' agreement to buy the house "as is" affirmatively negates the element of each claim that Langford's conduct caused them any harm. Thus, unless Larsen established an exception, we conclude that the "as is" clauses establish Langford's entitlement to summary judgment on each of the Larsens' claims. *See Fletcher v. Edwards*, 26 S.W.3d 66 (Tex. App.—Waco 2000, pet. ref'd).

### *Prudential Exception*

In *Prudential*, the Court qualified its decision, holding that the mere existence of an "as is" clause is not determinative in every case. *Prudential*, 896 S.W.2d at 162. A buyer is not bound by an "as is" agreement if proof of fraudulent inducement (fraudulent misrepresentation or concealment of information) by the seller is shown. *Id.* In the context of a summary judgment proceeding, fraudulent inducement is in the nature of a counter-defense responding to the defense raised by the seller. The defense raised by the seller is that the buyer's injuries were not caused by the seller because the buyer did not rely on the seller's representations. To successfully raise the counter-defense of fraudulent inducement the buyer must present some summary judgment evidence that "but for" the representations of the seller regarding the condition of the subject of the contract, the buyer would not have assented to a contract which contained an "as is" clause. This is established by presenting summary judgment evidence to raise a fact issue on each element of a simple fraud claim based upon those specific representations of the condition of the subject of the contract. *Fletcher v. Edwards*, 26 S.W.3d 66 at 77. The elements of simple fraud are:

(1) a *material representation;*

(2) which was *false;*

(3) which was known to be false when made or was made recklessly as a positive assertion without knowledge of its truth;

(4) which was intended to be relied upon;

(5) which was relied upon; and

(6) which caused injury.

*Id.* (emphasis added). Again however, with regard to the representation in the first element, it must be a material representation regarding the condition of the subject of the contract before it will raise the issue of fraudulent inducement to enter into a contract which contains an "as is" clause.

As the Supreme Court stated in *Prudential:*

A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase "as is" and then disa-

vow the assurance which procured the "as is" agreement.

*Id.* at 162.

The Supreme Court in *Prudential* analyzed two types of statements made by the seller. First, the Court determined that the seller's representations that the property was "superb," "super fine," and "one of the finest little properties in the City of Austin" were not actionable as they were merely puffing. Next, the Court determined that the representation that there were no defects in the building other than the foundation in the mechanical room was not material because the buyer did "not claim to have attached much significance to it, certainly not enough on which to buy an office building." *Id.* Further, even if the seller "had attached more significance to Buchanan's [the seller's] statement, there is no evidence whatever that Buchanan knew or had any reason to suspect that her statements were not absolutely correct, or that Buchanan knew that the building contained asbestos."

If the Larsens assert that because of Langford's representations regarding the condition of the subject of the contract that they entered into the contract with an "as is" clause, and it is then shown that the representation is false, the Larsens have raised the issue of fraudulent inducement to agree to the contract with an "as is" clause.

### Application

■ First, the Larsens argue that Langford's representative, Lahon, represented that the property would make a nice "bed and breakfast" when it was "fixed up" and that they relied upon this misrepresentation in deciding to purchase the home. Second, after the Larsens asked about some cracks in the walls, Lahon responded that the seller's disclosure statement said the house needed "some leveling."

Regarding the first statement, we hold that this statement was not a misrepresentation of material fact but merely "puffing" or opinion, and thus, could not constitute fraud. *Cf. Pennington v. Singleton,* 606 S.W.2d 682, 687 (Tex.1980) (statement that boat and motor were "new" or in "excellent" or "perfect" condition were not merely puffing or opinion). The Larsens have presented no evidence that the house, if "fixed up," would not make a nice bed and breakfast.

■ Nor do we think Lahon's statement referencing the seller's disclosure form that the house needed "some leveling" was a misrepresentation of material fact because even if the Larsens attached significance to this statement, there is no evidence whatsoever in the record that Lahon knew or had any reason to suspect that the seller's disclosure form was not correct, or that she knew the reason for the cracks. During her deposition, Lahon stated that she "suspected" that the house had structural problems because of the "obvious" signs of buckling floors and gaps in the walls. However, she stated that she did not know the extent of the structural problems and that she did not discuss this matter with the Larsens. A statement is not fraudulent unless the maker knew it was false when made or made it recklessly without knowledge of the truth. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990). Because the Larsens presented no evidence that Lahon's statement to the Larsens was fraudulent, it cannot be grounds for avoiding the "as is" agreement on the basis they were fraudulently induced to sign the contracts.

The summary judgment evidence confirms that the Larsens failed to get the house inspected even with the knowledge that this was an historic home over 70

 

years old which had been unoccupied for a year. They had an opportunity to have the property properly inspected before agreeing to purchase the home, however they failed to do so. Therefore, the evidence does not raise even an inference that the Larsens were fraudulently induced to rely on the representations made to them by Langford's representative or those representations made in the seller's disclosure notice and repeated by Langford's representative. Accordingly, we hold that the Larsens did not produce summary judgment evidence to establish each element of their claim that they were fraudulently induced and thus, the exception in *Prudential* does not apply.

### *Waiver of DTPA Violations*

One final item. The Larsens argue that the two documents fall short of meeting the DTPA criteria for a waiver. Specifically, they argue that "a purported waiver by a consumer of his rights under the DTPA is effective only if the consumer is represented by legal counsel in seeking or acquiring the goods in question; the waiver is in bold-face type at least ten point in size; the waiver is identified as a waiver of consumer rights; and the language of the waiver states that the consumer, after consultation with an attorney, voluntarily consents to waive the special rights and protections given consumers under the DTPA."

The "as is" agreements here, are not purported waivers of the Larsens' DTPA rights. *Prudential,* 896 S.W.2d at 163–64. Instead, the agreement affirmatively negates that any basis exists for the assertion of such rights. *Id.* In other words, the "as is" language does not say that the Larsens can't sue Langford for a violation of the DTPA, or that they waive their rights under the DTPA, but instead, it says that the Larsens can't prevail because

the "as is" agreement establishes that Langford's conduct could not have been the producing cause of the Larsens' damages. Accordingly, the agreements established facts which negate the Larsens' ability to prove the causation element that is required for their recovery under the DTPA.

### *Conclusion*

For the reasons stated above, we conclude that the Larsens' agreement to buy the historic home "as is" conclusively established that Langford's conduct was not the cause of the Larsens' damages. Langford was entitled to summary judgment on each of the Larsens' claims. Therefore, having overruled the Larsens' sole issue on appeal, we affirm the trial court's summary judgment. °