NO. 12-02-00040-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


SUSAN ROBBINS,
§
 APPEAL FROM THE 

APPELLANT



V.
§
 COUNTY COURT AT LAW NO. 4 OF


LADONNA CAPOZZI, ADLETA &

POSTON, INC. AND SUSAN BRATTON,

APPELLEES
§
 DALLAS COUNTY, TEXAS






 

 Appellant Susan Robbins ("Robbins") appeals the trial court's grant of summary judgment
in favor of Appellees, LaDonna Capozzi ("Capozzi"), Adleta & Poston ("A&P") and Susan Bratton
("Bratton"). Robbins raises three issues on appeal. We affirm.


Background

 In 1999, Capozzi purchased Unit C at the 3537 Normandy condominium project ("Unit C")
in Highland Park from Mockingbird Corporation as a place for her daughter, Meghan Capozzi
("Meghan"), to live while attending SMU. Unit C is part of a five-unit condominium complex with
enough garage space to house two cars for each unit. 

 In order to enter the Unit C garages, a 90-degree turn must be made from a driveway that runs
along the side of the garages. Before any of the condominiums were sold, the developers, Wallace
Swanson ("Swanson") and Allie Beth Allman ("Allman"), satisfied themselves that the garages
would accommodate different types of cars. Swanson successfully parked a large Jaguar sedan in
one of the Unit C garages and both Swanson and Allman parked Allman's Mercedes SUV in one of
the garages. 

 Shortly after her mother bought Unit C, Meghan discovered that SMU did not allow
freshmen to live off campus and had to give up the idea of living in the condominium during her
freshman year. Although Meghan did not live at Unit C, she went there on occasion and stored some
of her belongings there. Whenever she did so, she parked her Audi A4 sedan in one of the Unit C
garages. Meghan successfully negotiated the 90-degree turn from the driveway into the garage by
backing up and maneuvering her vehicle into the garage. One of Meghan's friends also successfully
maneuvered his car, a Mazda MX-3, into one of the garages.

 Meghan decided that it would be more convenient for her to park her car in the driveway next 
to her front door instead of in the Unit C garages. She believed the third space would not only
eliminate the need to line up her car to park in the Unit C garages but would also allow her to access
her own unit more easily. She also planned to have two roommates living with her the following
year, giving rise to the need for a total of three parking spaces for the property. Meghan's father,
John Capozzi, discussed the idea with Allman and in February of 2000, Mockingbird Corporation
executed and recorded a "Common Element Designation for 3537 Normandy, a Condominium" (the
"Driveway Designation"), designating an additional parking space in the driveway of the complex
(the "driveway space") to be used by the owner of Unit C. Once the Driveway Designation was
recorded, Meghan parked her car in the driveway space whenever she visited the condo. 

 Meghan later decided that she would leave SMU and transfer to another university in the
Northeast. Capozzi decided to sell Unit C and hired A&P as the broker. In March of 2000, Capozzi,
as Seller, and Robbins, as buyer, entered into a "Residential Condominium Contract (Resale) - All
Cash, Assumption Third Party Conventional or Seller Financing" (the "Condo Contract") for the sale
of the property. In the Seller's Disclosure Notice (the "notice") tendered to Robbins pursuant to the
Condo Contract, Capozzi checked boxes indicating that the garage was in "Working Condition" and
had "no known defects." Robbins also received a copy of the Driveway Designation as part of a
"Condominium Information Statement" that included copies of all recorded documents affecting the
complex. Robbins, who drove a Toyota 4-Runner SUV at the time, visited the property four times
before she bought it but never tried to park her SUV in any of the Unit C garages. The parties closed
on the Condo Contract, and Robbins received her deed to the property in April. 

 Shortly before Robbins moved into Unit C in late April, she discovered that she could not
maneuver her vehicle into either of Unit C's garages. Robbins and her father then attempted to park
other different-sized vehicles in the garages and could not get them into the garages. One of
Robbins's co-workers parked a two-door Acura coupe in one of the garages after he pulled up to the
entrance and drove his car forward and backward, turning each time to line his car up in order to
have an unimpeded entry into the garage. It took the co-worker about ten minutes to complete this
process. Later that month, Robbins learned that Meghan had experienced difficulties maneuvering
her car into the parking spaces and that Capozzi and her husband had negotiated the Driveway
Designation. 

 In September, Robbins filed suit against Capozzi, A&P, and A&P's agent, Susan Bratton,
asserting claims for common law fraud, a violation of sections 17.46(b)(5) and (23) of the Deceptive
Trade Practices Act ("DTPA"), and fraud in a real estate transaction in violation of section 27.01 of
the Texas Business and Commerce Code. Robbins alleged that the fraud arose out of all three
defendants' failure to disclose the difficulties Meghan encountered when parking her car in the Unit
C garages. Robbins sought rescission of the transaction, return of the purchase price paid for the
property, exemplary damages, costs and attorney's fees. 

 Capozzi, A&P, and Bratton answered, claiming that none of them knew of anyone who
claimed to be unable to park any particular vehicle in either of the Unit C garages. Capozzi also filed
a counterclaim, seeking her attorney's fees pursuant to Texas Rule of Civil Procedure 13, a provision
in the Condo Contract (1), and section 17.50(c) of the Deceptive Trade Practices Act. 

 The trial court granted summary judgment to Capozzi, A&P and Bratton on all of Robbins's
claims. In a bench trial on September 18, the trial court ruled that Capozzi was entitled to recover
her attorney's fees under the Condo Contract. 

 Robbins filed a motion for new trial on October 19, which was overruled by operation of law. 
Robbins then filed her notice of appeal on December 19. 


Statutory and Common Law Fraud Claims

 In her first and second issues, Robbins argues that the trial court erred in granting summary
judgment on the statutory and common law fraud claims she asserted against each defendant. 

Standard of Review

 The party with the burden of proof must prove it is entitled to judgment by establishing each
element of its claim or defense as a matter of law, or by negating an element of a claim or defense
of the opposing party as a matter of law. Martin v. Harris County Appraisal Dist., 44 S.W.3d 190,
193 (Tex. App.- Houston [14th Dist.] 2001, pet. denied); Tex. R. Civ. P. 166a(c). When a motion
for summary judgment raises multiple grounds, we may affirm if any ground is meritorious.
Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex.1996); Hanson v. Republic Ins. Co.,
5 S.W.3d 324, 327 (Tex. App.- Houston [1st Dist.] 1999, pet. denied). Since the burden of proof
is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved
against the movant, we must view the evidence and its reasonable inferences in the light most
favorable to the non-movant. See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply
Co., 391 S.W.2d 41, 47 (Tex. 1965). The only question is whether an issue of material fact is
presented. See Tex. R. Civ. P. 166a(c).

 Once the movant has established a right to summary judgment, the non-movant has the
burden to respond to the motion for summary judgment and present to the trial court any issues that
would preclude summary judgment. See, e.g., City of Houston v. Clear Creek Basin Authority, 589
S.W.2d 671, 678-79 (Tex. 1979). Where summary judgment does not specify the grounds on which
it was granted, the non-movant on appeal must show that each ground alleged in the motion is
insufficient to support it. Duran v. Furr's Supermarkets, Inc., 921 S.W.2d 778, 784 (Tex. App.-
El Paso 1996, writ denied). 

Common Law Fraud

 Robbins contends that the trial court should not have granted summary judgment on the
common law fraud claims she asserted against Capozzi, Bratton and A&P because she raised a
genuine issue of material fact on each element of the claims.

 In order to recover for common law fraud, a claimant must prove (1) a material representation
was made, (2) the representation was false, (3) when the representation was made, the speaker knew
it was false or made the statement recklessly without any knowledge of truth and as a positive
assertion, (4) the representation was made with the intention that it be acted upon by the other party,
(5) that party acted in reliance upon the representation, and (6) that party suffered injury. Johnson
& Higgins, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998). 


LaDonna Capozzi


 Robbins contends that Capozzi's representation on the seller's disclosure that the Unit C
parking garage was in "working condition" and had "no known defects" was false because Robbins
could not maneuver her Toyota 4-Runner into the garage. Robbins further contends that this
representation was material because Robbins's deposition testimony, attached to her response to
Capozzi's motion for summary judgment, revealed that she would not have bought Unit C if she had
been told about the parking difficulties. Robbins also argues that a genuine issue of material fact
exists as to whether or not Capozzi had a duty to disclose to Robbins (1) the difficulties Meghan had
when parking her vehicle in the garage and (2) the reason the Driveway Designation had been
amended to provide a third parking space for Unit C outside of the enclosed parking structure. 

 It is undisputed that Capozzi represented that the garage was in "working condition" and had
"no known defects"; however, Robbins has not presented any evidence to raise a fact issue on the
falsity of this representation. She has not directed us to anything in the record demonstrating that
the garage was not in working condition or was defective in any way. She only complains that she
could not drive her vehicle into the garage because the width of the driveway that ran along the side
of the garage was not large enough to compensate for the width of the turning radius of her vehicle. 
Thus, Robbins's complaint is, in substance, that the driveway is defective. We first note that
Capozzi's representations relate only to the garage and not to the driveway. However, even if the
term "garage" includes the driveway, the record does not support Robbins's contention that the
driveway is defective. Capozzi testified that five different vehicles (an Audi A4, a Mazda MX-3,
a full-size Jaguar, a Mercedes C280, and a Mercedes SUV) have been parked in the Unit C garages. 
In April of 2001, A&P conducted an inspection of the garages. A&P's employee, Duke Jimerson,
drove a 1997 Mercedes C280 sedan into one of the Unit C garages three times with no difficulty. 
Robbins even testified in her deposition that her co-worker parked a car in the garage, albeit after
ten minutes of maneuvering his vehicle. Therefore, Robbins has not shown that the driveway is
defective, but merely that the driveway does not accommodate the turning radius of her particular
vehicle and possibly that of her co-worker's vehicle. Although this situation may be an
inconvenience, it is not a defect. Consequently, Robbins has not shown that Capozzi's
representations were false.

 Robbins also argues that Capozzi's failure to disclose the difficulties Meghan encountered
while parking her car constituted fraud. As a general rule, a failure to disclose information does not
constitute fraud unless there is a duty to disclose the information. Bradford v. Vento, 48 S.W.3d
749, 755 (Tex. 2001). Thus, silence may be equivalent to a false representation only when the
particular circumstances impose a duty on the party to speak and he deliberately remains silent. Id. 
Whether such a duty exists is a question of law. Id. A seller of real estate is under a duty to disclose
those material facts which would not be discoverable by the buyer in the exercise of ordinary care
and due diligence. Pairett v. Gutierrez, 969 S.W.2d 512, 515 (Tex. App.- Austin 1998, pet. denied). 
"Material" means a reasonable person would attach importance to and would be induced to act on
the information in determining his choice of actions in the transaction in question. American
Medical Int'l, Inc. v. Giurintano, 821 S.W.2d 331, 338 (Tex. App.- Houston [14th Dist.] 1991, no
writ). Likewise, a seller of real estate has no duty to disclose material facts which would be
discoverable by the buyer in the exercise of ordinary care and due diligence. 

 The record demonstrates that Robbins visited the property four times before the closing date
but never tried to park her vehicle in the Unit C garages because when she looked at the garages, she
thought she would have no problem driving into them. The record also supports Robbins's assertion
that the parking at Unit C was material because Robbins testified at her deposition that she would
not have bought the property if she had known about Meghan's parking difficulties. However, it is
also undisputed that Robbins was provided a copy of the Driveway Designation before the closing
date and had the opportunity to inquire about the reasons the Driveway Designation was obtained
but chose not to. (2) Robbins also knew the size and turning capabilities of her own vehicle; therefore,
she was in a much better position than Capozzi to discover whether or not her vehicle would be able
to turn into the Unit C garages. Had Robbins exercised ordinary care and due diligence by
attempting to park her vehicle in either of the garages before the closing date, she would have
discovered that she could not turn her vehicle into the garages. Therefore, we hold that Capozzi did
not have a duty to disclose any problems Meghan encountered when attempting to park her car in
any of the Unit C garages. Robbins's common law fraud issue, as it relates to Capozzi, is overruled.


Susan Bratton and A&P


 Robbins argues that Bratton and A&P are liable for common law fraud because (1) Bratton
acted in concert with Capozzi in preparing the Seller's Disclosure Notice and (2) a two-page sales
flyer Bratton prepared for the marketing of Unit C failed to disclose the third parking space created
by the Driveway Designation even though Bratton was aware of the difficulties Meghan encountered
when parking her car in Unit C's garages. Robbins contends that A&P is liable for the actions of
Bratton, its agent, under a theory of respondeat superior. (3)

 In order to defeat Bratton's and A&P's motion for summary judgment, Robbins had to raise
a genuine issue of material fact on each element of common law fraud. As is the case with Capozzi,
Robbins has failed to show that any of the representations Bratton made were false. The evidence
is undisputed that Robbins was made aware of the Driveway Designation before the closing date,
yet failed to inquire about the reasons behind the designation and also failed to determine, after four
visits to Unit C, whether her vehicle would be able to turn into the Unit C garages. Whether
Robbins's vehicle would be capable of turning into one of the Unit C garages is the type of
information that a buyer would be expected to discover by ordinary inquiry. See Bradford, 48
S.W.3d at 756. Robbins's common law fraud issue, as it relates to Bratton and A&P, is overruled.

DTPA and Fraud in a Real Estate Transaction

 In her original petition, Robbins alleged that Capozzi, Bratton and A&P violated the
Deceptive Trade Practices Act ("DTPA") by failing to disclose the difficulties Meghan encountered
in entering the Unit C garages from the driveway. Robbins also alleged that Capozzi, Bratton and
A&P all committed fraud in a real estate transaction in violation of section 27.01 of the Texas
Business and Commerce Code. 

Deceptive Trade Practices


 To recover damages under the DTPA, Robbins had to prove that Capozzi, Bratton and A&P
engaged in "false, misleading or deceptive acts or practices" by 



 representing that goods or services have sponsorship, approval, characteristics,
ingredients, uses, benefits, or quantities which they do not have . . . [or]


 . . . .



 failing to disclose information concerning goods or services which was known at
the time of the transaction if such failure to disclose such information was intended
to induce the consumer into a transaction into which the consumer would not have
entered had the information been disclosed.



Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5), (23). 

 Robbins testified at her deposition that she would not have bought the property if she had
known about Meghan's parking difficulties. However, mere nondisclosure of material information
is not enough to establish an actionable DTPA claim. Century 21 Real Estate Corp. v. Hometown
Real Estate Co., 890 S.W.2d 118, 126 (Tex. App.- Texarkana 1994, writ denied). In order to
recover damages under the DTPA for the failure to disclose material information, the plaintiff must
also show that the information was withheld with the intent of inducing the consumer to engage in
a transaction. Id. In the case at bar, the evidence is well established that both Capozzi and Bratton
knew that cars had been parked in the garages. However, there is no evidence in the record that
Capozzi or Bratton knew that Robbins's vehicle could not be parked in the garage or that Capozzi
and Bratton withheld any information regarding Meghan's parking difficulties with the intent to
induce Robbins into purchasing Unit C. Therefore Robbins's issue, as it relates to her cause of
action under the DTPA, is overruled.


Fraud in a Real Estate Transaction


 Robbins also alleged that Capozzi, Bratton and A&P violated section 27.01 of the Texas
Business and Commerce Code, entitled "Fraud in Real Estate and Stock Transactions." In order to
recover for a violation of section 27.01, a plaintiff must show (1) a representation of a material fact
was made, (2) the representation was false, (3) the representation was made to induce a person to
enter a contract, (4) the person relied upon that representation in entering the contract, and (5) the
false representation caused an injury. Larsen v. Carlene Langford & Assocs., Inc., 41 S.W.3d 245,
249 (Tex. App.- Waco 2001, pet. denied). A cause of action for statutory fraud differs from the
common law cause of action only in that it does not require proof that the false representation was
made knowingly or recklessly. Id. 

 Although statutory and common law fraud differ in one element, they also have one element
in common: the falsity of the representation. As we stated in our discussion on the defendants'
liability under Robbins's common law fraud theory, Robbins has not presented any evidence to raise
a genuine issue of material fact on the falsity of any representation by Capozzi, Bratton, or A&P. 
Robbins's issue, as it relates to statutory fraud, is therefore overruled.


Attorney's Fees

 The Condo Contract states that "[t]he prevailing party in any legal proceeding brought under
or with respect to the transaction described in his contract is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees." In her third and final
issue, Robbins contends that the trial court erred in awarding Capozzi her attorney's fees pursuant
to this provision in the Condo Contract because neither Robbins nor Capozzi asserted any cause of
action for breach of the underlying contract or, alternatively, because such a ruling contravenes
Texas public policy as expressed in and by the DTPA. 

 Capozzi maintains that the "transaction described in this contract" was the sale of Unit C to
Robbins. Capozzi further argues that because Robbins admitted in her Original Petition that her
claims "concern Defendant Capozzi's conduct in connection with Defendant Capozzi's sale of real
estate in Dallas County, Texas to [Robbins]," and because Capozzi defeated all of Robbins's claims
by obtaining a favorable ruling on her motion for summary judgment, Capozzi was entitled to
recover her attorney's fees as "the prevailing party" in the legal proceeding below. 

 A "prevailing party" successfully prosecutes or defends against an action, prevailing on the
main issue, even if not to the extent of his or her original contention. See City of Amarillo v. Glick,
991 S.W.2d 14, 17 (Tex. App.- Amarillo 1997, no pet.). Whether a party is a prevailing party is
based on success on the merits, not the award or denial of damages. Id. A prevailing party is one
who is vindicated by the trial court's judgment. Id.; Dear v. City of Irving, 902 S.W.2d 731, 739
(Tex. App.- Austin 1995, writ denied). In the case at bar, Capozzi was the "prevailing party"
because she successfully defended all of Robbins's claims. Thus, Capozzi is entitled to recover her
costs and attorney's fees if Robbins's fraud and DTPA claims were "brought under or with respect
to the transaction" described in the Condo Contract.

 Robbins, through the initiation of legal proceedings, sought to rescind the contract on the
basis that Capozzi's representations regarding the Unit C garage were false and that those
representations were made for the purpose of inducing Robbins to enter into the Condo Contract. 
In her lawsuit, she alleged causes of action for statutory and common law fraud, as well as violations
of the DTPA. Robbins's Original Petition alleges that Capozzi made the alleged misrepresentations
in order to induce Robbins into the transaction, i.e., the purchase of Unit C. The alleged
misrepresentations and the transaction go hand in hand. We hold that Robbins's lawsuit was
"brought under or with respect to the transaction" between Robbins and Capozzi. Consequently,
Capozzi is entitled to recover her attorney's fees pursuant to the Condo Contract. Robbins's third
issue is overruled.


Conclusion

 The trial court did not err in granting summary judgment in favor of Capozzi because
Robbins failed to raise a genuine issue of material fact on her statutory fraud, common law fraud,
and DTPA claims. The trial court also committed no error in awarding Capozzi her attorney's fees
pursuant to the provision in the Condo Contract. 

 Therefore, the trial court's judgment is affirmed.


 LOUIS B. GOHMERT, JR. 

 Chief Justice



Opinion delivered November 8, in the Year of our Lord 2002.

Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.




(PUBLISH)








 


COURT OF APPEALS


TWELFTH COURT OF APPEALS DISTRICT OF TEXAS


JUDGMENT



November 8, in the Year of our Lord 2002



NO. 12-02-00040-CV



SUSAN ROBBINS,


Appellant


V.


LADONNA CAPOZZI, ADLETA & POSTON, INC.,


AND SUSAN BRATTON,


Appellees







 Appeal from the County Court at Law No. 4


 of Dallas County, Texas. (Tr.Ct.No. CC-00-10710-d)








 THIS CAUSE came to be heard on the appellate record and briefs filed
herein, and the same being inspected, it is the opinion of this Court that there was no error in the
judgment.

 It is therefore ORDERED, ADJUDGED and DECREED that the judgment
of the court below Be In All Things Affirmed and that all costs of this appeal are hereby
adjudged against the appellant, Susan Robbins, for which execution may issue, and that this
decision be certified to the court below for observance.

 Louis B. Gohmert, Jr., Chief Justice.

 Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.
1. The provision in the Condo Contract under which Capozzi sought her attorney's fees states "[t]he
prevailing party in any legal proceeding brought under or with respect to the transaction described in his contract is
entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees."
2. Capozzi testified that she obtained the Driveway Designation because it was "more convenient" for her
daughter to "pull up" and park at the door of the condominium than to take the "extra time" to "line up" her car in
order to park in the garage.
3. Robbins's attempt to hold A&P liable for Bratton's actions under a theory of respondeat superior was not
challenged by A&P.