

# IN THE
## TENTH COURT OF APPEALS

### No. 10-23-00134-CV

**MARCUS BLALOCK,**

**Appellant**

**v.**

**CASA LATINAS, LLC AND NIDIA SALDIVAR,**

**Appellees**

**From the 13th District Court**
**Navarro County, Texas**
**Trial Court No. D22-30215-CV**

## MEMORANDUM OPINION

Marcus Blalock appeals from a summary judgment rendered against him in his suit against Casa Latinas, LLC and Nidia Saldivar in a dispute arising from his purchase of a home. In two issues, Blalock asserts the judgment should be reversed and the cause remanded because he was fraudulently induced into entering the contract. We affirm.

## Background

Blalock purchased a home from Appellees in April 2020. Thereafter, he experienced numerous problems with the home. Alleging that Appellees made multiple misrepresentations and failed to disclose defects in the home, he sued them for violations of the Texas Deceptive Trade Practices Act (DTPA) and fraud in connection with a real estate transaction pursuant to Chapter 27 of the Texas Business and Commerce Code.

Appellees filed a traditional motion for summary judgment asserting there is no genuine issue of material fact as to the causation element of Blalock's DTPA and statutory fraud causes of action because the "as is" clause in the sales contract negates that element. Further, they asserted that there is no genuine issue of material fact as to any exception that would negate the application of the "as is" clause. The trial court granted the motion and ordered that Blalock take nothing from Appellees.

## The As Is Clause

In his first issue, Blalock contends Appellees fraudulently induced him into purchasing the residence by concealing material information concerning the condition and circumstances of the home. He contends Appellees knew there were deficiencies in the plumbing and electrical systems which they failed to disclose. He also asserts they failed to disclose that a room had been added to the residence after construction of the home was completed and that the residence had been occupied before Blalock entered into the contract to purchase it.

In his second issue, Blalock contends the contract's "as is" clause is not binding on him because it is a product of fraud. He asserts that he was induced to enter the agreement by Appellees' fraudulent misrepresentations and failure to disclose required material information. He further argues that the totality of the circumstances surrounding the purchase of the residence precludes binding him to the "as is" clause. He claims that Appellees were more sophisticated in real estate transactions than he was, and the "as is" clause was just boiler plate language in a standard form purchase agreement that could not have been negotiated.

STANDARD OF REVIEW

We review the trial court's decision to grant summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Eagle Oil & Gas Co.*, 619 S.W.3d at 705. A defendant who conclusively negates at least one of the essential elements of the cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence sufficient to raise a genuine issue of material fact, thereby precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017). We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in his favor. *Eagle Oil & Gas Co.*, 619 S.W.3d at 705. The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

ANALYSIS

**Causation**

In their motion, Appellees asserted that they carried their initial summary judgment burden by producing evidence that Blalock purchased the property subject to an "as is" clause in the contract, which negates the causation element of all of Blalock's claims. Under paragraph 7D(1) of the parties' contract, Blalock agreed to accept the property "as is." Paragraph 7D provides:

> ACCEPTANCE OF PROPERTY CONDITION: "As is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
> (Check one box only)

[X] (1) Buyer accepts the Property As Is.
[ ] (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments:_____
(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

Buyers who contract to purchase something "as is" agree to make their own appraisal of the bargain and to accept the risk that they may be wrong. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995). Generally, an "as is" agreement negates the causation essential to recovery for a DTPA violation and fraud. *See id.* The sole cause of a buyer's injury in such circumstances is the buyer himself. *Id.* Accordingly, because the parties' contract contains an "as is" clause, Appellees showed entitlement to summary judgment by conclusively negating the causation element of Blalock's claims. *See Fernandez*, 315 S.W.3d at 508. The burden then shifted to Blalock to raise a genuine issue of fact precluding summary judgment. *See Lujan*, 555 S.W.3d at 84.

**Exceptions**

*1. Circumstances*

Blalock contends the "as is" clause is not binding. The *Prudential* court identified exceptions to the enforcement of an "as is" clause. *See Prudential*, 896 S.W.2d at 162. When determining the enforceability of an "as is" clause, we examine the nature of the transaction and totality of the circumstances. *See id.* Blalock contends he lacked sophistication in real estate matters. Blalock was a first-time home buyer, while Appellees owned and operated four rental properties. Although Saldivar testified that

she had bought "homes that were in auction," she did not have those homes constructed. There is no evidence of the actual expertise of either side in real estate matters. Moreover, both sides were represented by a realtor through which the parties engaged in an arms-length transaction.

The parties used a standard Texas Real Estate Commission form that included a provision setting out two options regarding buyer's acceptance of the property's condition. Blalock could have accepted the property subject to the seller's completion of certain repairs, or, as chosen, Blalock could agree to accept the property in its current condition. *See Van Duren v. Chife*, 569 S.W.3d 176, 185-86 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Because the contract required the parties to choose from two options, the "as is" clause is not, as Blalock asserts, boilerplate language. *Id*. at 187. Here, the "as is" clause is an important part of the basis of the bargain, not an incidental or boilerplate provision, and was entered into by parties of relatively equal bargaining position. Blalock's agreement in paragraph 7D that he accepts the property in its present condition, without reliance on statements by the seller, should be given effect. *See Prudential*, 896 S.W.2d at 162. Reviewing the evidence in the light most favorable to Blalock, we conclude he did not present evidence indicating there is a fact question regarding the relative sophistication of the parties, whether the parties freely negotiated the contract at arm's length, or whether any other circumstances of the transaction invalidate the "as is"

agreement. Blalock has not raised any fact questions on application of this exception to the determinative effect of the "as is" clause. *See id.*

### 2. *Fraudulent Inducement*

Additionally, Blalock argues that he is not bound by the purchase contract due to the fraudulent inducement exception set out in *Prudential*. Under that exception, an "as is" clause is not binding on a buyer who is induced to enter the contract because of the seller's fraudulent representation or concealment of information. *Id*. In the context of a summary judgment proceeding, fraudulent inducement is in the nature of a counter-defense responding to the defense raised by the seller. *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 253 (Tex. App.—Waco 2001, pet. denied); *see also Fryar v. Mees*, No. 10-06-00135-CV, 2007 Tex. App. LEXIS 3204, at *6 (Tex. App.—Waco April 25, 2007, no pet.) (mem. op). The buyer must present competent evidence creating a material issue of fact on each element of a simple fraud claim. *Larsen*, 41 S.W.3d at 253.

Fraudulent inducement is a species of common-law fraud that arises only in the context of a contract. *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). A fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or made it recklessly without any knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation

caused injury. *Id*. Failure to disclose information may be the equivalent of a false representation where there is a duty to disclose the information and the party deliberately remains silent. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Additionally, the plaintiff has to show that its reliance on the misrepresentation or omission was justifiable. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653-54 (Tex. 2018).

Electrical and Plumbing Systems

Blalock asserts that, after closing, he learned that the house's electrical and plumbing systems are defective. At the heart of his argument regarding alleged omissions about the electrical and plumbing systems is an inspection report prepared by Texans First Inspection Services, dated December 31, 2019, which was prepared for a prior potential buyer of the property. The inspector noted: there are no arc fault breakers present and there is a double lugged wire that could lead to fire, smoke alarms need to be finished out and batteries added, there are no GFCI's on the back porch, and some walls are missing outlets. The Texans First report indicates that the master shower failed the pan test and needs to be replaced, and there is a loose shower handle and a small leak in a hose bib. The inspector noted that he could not inspect the drain lines. He recommended having a plumber scope the lines with a camera. Because of the contents of this report, Blalock asserts that Appellees knew, and failed to disclose, that there were defects in the electrical system and there was a problem with sewer lines backing up.

In his response to the summary judgment motion, Blalock argued that the court must take as true his statement that he relied on Saldivar's honesty, and that statement proves detrimental reliance. In his affidavit, Blalock stated that he relied on Saldivar's honesty in complying with the law for disclosing any defects to the property.[1] Prior to closing, they amended the contract to provide that "Seller shall pay $4,000 to the buyer upon closing for repair of bathroom showers." In his affidavit, he stated that the contract was amended without any prior consultation with him, and he denied authorizing the electronic signature on the amendment. He stated that, during closing, "Saldivar explained to [him] that the shower pan had failed a test during inspection by Texas (sic) First" but that neither she nor anyone else disclosed any other defects before he signed the final documents at closing.

Appellees contend Blalock's argument fails because there were no omissions. They assert that he saw the report before closing and, therefore, he knew of any deficiencies identified in the report. In her affidavit, Saldivar explained that, after receiving the inspection report, she "became aware of the shower pan issue as well as other minor issues discussed in the report . . . ." Saldivar testified in her deposition that she received a copy of the inspection report and then negotiated the amendment to address the shower pan problem. She also stated in her affidavit that Blalock was

---

[1] The trial court sustained Appellees' objections to specific paragraphs of Blalock's affidavit and that ruling is not challenged on appeal. These paragraphs are not considered in our review.

provided a copy of the inspection report as "evidenced by the fact he produced a copy of the same in response to [her] discovery in this case and the fact that [she] paid him $4000 at closing for repair of the defective shower pan identified in the report."

A plaintiff relying on fraudulent inducement as a defense must show his reliance was justifiable. *See JPMorgan Chase Bank, N.A.*, 546 S.W.3d at 653-54. Blalock admitted that, during closing, Saldivar disclosed a defect that had been discovered during the 2019 inspection by Texans First Inspection Services. Even if reasonable jurors believed Blalock's assertion that Saldivar did not disclose any other defects, he knew of the 2019 report, and that report was a "red flag" indicating that reliance on Saldivar's honesty was not warranted. *See id.* at 655. At that point, he knew of the existence of the report and was on notice of the possibility that other defects were named in the same report. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 423-24 (Tex. 2015) (per curiam) (plaintiff did not justifiably rely on defendant's statements about contents of release when plaintiff had opportunity to read release but did not do so). Mere confidence in her honesty does not excuse Blalock's failure to exercise reasonable diligence to examine the report in its entirety. *See JPMorgan Chase Bank, N.A.*, 546 S.W.3d at 654. In this arm's length transaction, it would not be a reasonable inference to say Blalock was justified in relying on Saldivar's honesty and integrity. *Id.*

In his affidavit, Blalock never stated that he did not read the 2019 report before closing. To support his argument, that fact would have to be supplied by inference. In

light of the fact Blalock knew before closing was complete that there was an inspection report, and it revealed a $4,000 defect, reasonable jurors could disregard the inference that he never saw or read the report itself. *See Eagle Oil & Gas Co.*, 619 S.W.3d at 705. Blalock did not raise a fact issue on the element of reliance as to the alleged omissions regarding the electrical and plumbing systems.

Furthermore, Blalock asserted that, after he purchased the home, the toilets would not drain out properly, instead they backed up into the home. He contends Appellees failed to disclose this defect. Blalock hired a plumber who used a camera to inspect the lines. The plumber determined that the sewer lines were improperly installed and the cost to repair them would be $38,000. An element of fraudulent inducement is the defendant's knowledge of the misrepresentation or omission. *See Int'l Bus. Machs. Corp.*, 573 S.W.3d at 228. The 2019 inspection report did not indicate there was a problem with the sewer lines. The inspector did not inspect the lines. Blalock did not meet his burden to produce evidence raising a fact question as to whether Appellees knew of this builder's defect before Blalock purchased the house. *See Lujan*, 555 S.W.3d at 84.

Additional Room

Blalock contends Appellees had an obligation to disclose that a room had been added to the residence after construction was completed but failed to do so. Saldivar testified that the home was completed between September and October 2018. But a January 7, 2019 invoice reflects that Saldivar requested the contractor to "add an

additional room" at the back of the house for an office, which he did. On her disclosure notice, she indicated that she was not aware of any room additions made without necessary permits, with unresolved permits, or not in compliance with building codes.

Blalock argues that a post-construction room addition is material information, raising issues of foundation separation and cracks in the foundation. Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions. *Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011). The record does not clarify how the additional room was added. An addition might be material if it required a new permit or was not built in compliance with building codes. Nothing in the record suggests a separate slab was poured or that the roofline was extended. Blalock did not provide evidence of any structural modifications or alterations made without necessary permits or not in compliance with building codes. Further, Blalock presented no evidence that Saldivar knew that her request to add a room constituted a structural modification not in compliance with building codes. *See Int'l Bus. Machs. Corp.*, 573 S.W.3d at 228.

Appellees presented a report generated by Geohazards Engineering and Geology, dated September 14, 2021, made in response to an insurance claim by Blalock. The engineer noted interior surface irregularities and cracks and, on the exterior, separation between the mortar and concrete slab. He observed a repair to the concrete slab. He explained that interior surface irregularities "were consistent with irregularities from the

finishing of the joints between wall panels." He also indicated that the cause of cracks in the concrete slab were initial post-construction shrinkage of the concrete during the curing process which was common and may be anticipated to occur.

Appellees also presented a March 5, 2022 report created by ARIEL Inspections & Engineering prepared at Blalock's request. The engineer stated that "[n]o cracks were noted in foundation perimeter" and the "[f]oundation is performing as intended." However, he also determined that the "[f]oundation is not level and mortar was used to align brick veneer – poor workmanship." Considering the evidence in the light most favorable to Blalock, it indicates that he purchased a home that was not built in the best workmanlike manner. But neither engineer mentioned a post-construction add-on and none of their findings hint at the possibility that any noted deficiencies resulted from such an add-on. We conclude that the evidence did not raise a fact question as to the materiality of the alleged omission or whether the alleged omission caused Blalock's damages. *See Mayes*, 236 S.W.3d at 755.

<u>Prior Occupant</u>

Blalock asserts that Appellees failed to disclose that someone had lived in the house before he purchased it. Saldivar testified that she built the house for herself, spent a lot of time there, but never lived in the house. She spent two or three nights there sleeping on the floor. On two occasions, two of her sisters spent the night there with her. She said no one has ever rented the home.

Blalock presented records of the B & B Water Company to support his contention that someone had lived in the home before he purchased it. In the affidavit accompanying the records, the affiant explained that an application for water service was tendered on August 22, 2018, and a second one was made on December 5, 2018. There was continuous water usage under the name of the second application until March 24, 2020. A reasonable juror could infer that the builder first applied for water service and Saldivar was the second to apply. While there was a significant amount of water usage in some months, and a reasonable juror could infer that Saldivar paid for it, Saldivar denied that anyone lived there. The record shows usage varied most months from January 2019 through March 2020 from "Usage of 0 Water" to "Usage of 8300 Water" at the highest point.[2] There was no pattern or uniformity in usage. In consecutive months it started at 4900 for two months in a row, then plummeted to 0, then bounced to 4700, 3500, 2900, 6700, 8300, 3300, and 3100 before dropping to between 100 and 300 for five months. There was no water use in April 2020, the month the parties closed on the sale.

A third application was made on May 5, 2020 and was continuous to February 2023. It is reasonable to infer that Blalock was the third applicant. Usage during this time period was not entirely consistent. It once rose to 2800, and once dropped to 700. Normally, it remained between 1300 and 2500. However, the numbers are more uniform

---

[2] Neither the report, the business record affidavit supporting it, nor Blalock provides clarification as to the unit of measure. We assume usage is measured in gallons.

than those of the previous applicant and the evidence shows Blalock was living in the home during this time period. Comparing usage during the two time periods, a reasonable juror could infer that water usage during the period from January 2019 to March 2020 cannot be attributed to normal household usage by an inhabitant of the home. A reasonable juror could infer that Saldivar paid for water at a home she owned and used it for some undisclosed purpose, although no one lived there.

Blalock provided no evidence in support of his contention that the home had previously been occupied except the water company records, and they do not raise a fact question regarding whether someone was living in the house. Furthermore, Blalock did not raise a fact question addressing whether an undisclosed previous occupant was a material omission. *See Lujan*, 555 S.W.3d at 84.

Regarding each of the alleged omissions, Blalock failed to raise a fact question on one or more elements of fraudulent inducement. Therefore, he has not shown entitlement to the fraudulent inducement exception to the "as is" clause. *See Prudential Ins. Co.*, 896 S.W.2d at 162; *Larson*, 41 S.W.3d at 253.

## Conclusion

Because the parties' contract includes an "as is" clause, Appellees conclusively negated the causation element of Blalock's causes of action. Blalock did not raise a genuine issue of fact as to any exception precluding the "as is" clause's enforceability. We overrule Blalock's first and second issues.

We affirm the trial court's judgment.[3]

STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
(Chief Justice Gray concurs.)
Affirmed
Opinion delivered and filed November 2, 2023
[CV06]



---

[3] All pending motions are dismissed as moot.