Charles **PAIRETT** and Stephanie Pairett, Appellants,

v.

Alicia R. **GUTIERREZ** and Tammy Taylor, Appellees.

No. 03–97–00447–CV.

Court of Appeals of Texas, Austin.

May 7, 1998.

Kevin B. Miller, Miller & Henderson, San Antonio, for Appellant.

Larry J. Goldman, Davis, Adami & Cedillo, Inc., San Antonio, for Appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

Appellants Charles and Stephanie Pairett sued Alicia Gutierrez and Tammy Taylor, appellees (collectively "Defendants"), for violations of the Texas Deceptive Trade Prac-

tices Act ("DTPA"), Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (West 1987 & Supp.1998); statutory fraud, Tex. Bus. & Com.Code Ann. § 27.01 (West 1987); common law fraud; and negligent misrepresentation growing out of the Pairetts' purchase from Defendants of a home with an allegedly defective foundation.[1] The trial court granted summary judgment on these claims in favor of Defendants, and this appeal followed. In their sole point of error, the Pairetts assert that the summary judgment evidence does not conclusively negate the existence of a genuine issue of material fact or show that Defendants are entitled to judgment as a matter of law. We will reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 9, 1992, the Pairetts executed an earnest money contract by which they agreed to purchase from Defendants a residence in San Antonio. The contract provided that an "Owner Disclosure Statement" and a "Property Condition Addendum" would constitute part of the contract. Defendants provided these documents to the Pairetts. The Owner Disclosure Statement, which was signed by Defendants, contained a representation that the owners were not aware of any "defects/malfunctions" in the foundation. The Property Condition Addendum allowed the Pairetts to perform their own inspection and evaluation of the home, including the foundation, and stated that a failure to provide an inspection report and to designate requested repairs would waive the buyers' "repair rights." The Pairetts chose not to have the foundation inspected. The Monday after closing, the Pairetts discovered a crack in the foundation under the linoleum in the kitchen. This suit followed.

Defendants' motion for summary judgment stated three grounds: (1) that the Pairetts purchased the residence "as is"; (2) that Defendants did not owe the Pairetts any duty to disclose foundation defects because Defendants did not have any knowledge of such defects; and (3) that Defendants could not

have engaged in conspiracy because, again, they had no knowledge of any defects in the foundation. Defendants sought to prove their lack of knowledge by their own affidavits, in which they averred that "[a]t no time prior to the sale and closing of the residence ... did I have any knowledge of any foundation cracks." In response to Defendants' motion, the Pairetts presented summary judgment evidence that Defendants made affirmative representations that they were not aware of any defects in the foundation, that the Pairetts relied on such representations, that the crack in the foundation had probably been there since the house was built, that the crack in the floor would have been obvious to anyone familiar with the home, and that shortly after the transaction one of the Defendants made an unsolicited inquiry to the Pairetts about problems with the foundation.

The trial court granted summary judgment in favor of Defendants. The order did not specify the grounds on which the court relied. The Pairetts perfected this appeal.

## DISCUSSION

### I. Standard of Review

In their sole point of error, the Pairetts assert that the trial court erred in granting summary judgment for Defendants. The standards for reviewing a motion for summary judgment are well established: (1) the movants for summary judgment have the burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *Gulbenkian v. Penn,*

---

1. The Pairetts also named as defendants the listing and selling agents and their employers. The trial court severed the Pairetts' claims against

Gutierrez and Taylor from their claims against the other defendants.

151 Tex. 412, 252 S.W.2d 929, 931 (1952). When an order granting summary judgment does not specify the grounds on which the court relied, the appellate court must affirm the judgment if any of the theories raised in the motion for summary judgment is meritorious. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

## II. Point of Error

In response to the Pairetts' sole point of error, Defendants advance the same three arguments on which they based their motion for summary judgment in the first place. First, Defendants contend the Pairetts purchased the property "as is," which, if true, could preclude the Pairetts from proving causation. Second, Defendants argue that they did not owe a duty to disclose any foundation defects to the Pairetts because they had no knowledge of the crack in the foundation. Finally, Defendants state that their lack of knowledge of any foundation defects precludes the existence of any genuine issue of material fact regarding the claim of conspiracy to commit fraud. We conclude that Defendants have not carried their summary judgment burden as to any of these grounds.

### A. Duty to Disclose Defects

■ Under the DTPA, a seller has no duty to disclose to a buyer defects of which a seller is unaware. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479 (Tex.1995); *Robinson v. Preston Chrysler–Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex. 1982). However, a seller of real estate is under a duty to disclose those material facts which would not be discoverable by the buyer in the exercise of ordinary care and due diligence. *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 657–58 (Tex. 1979). Thus, to obtain summary judgment on this ground, Defendants had the burden to prove *conclusively* that (1) they had no knowledge of the defect, and (2) the defect was discoverable by the buyers in the exercise of ordinary care.

■ Defendants have failed to meet this burden, presenting only their own affidavits stating that neither seller knew of the defects prior to the sale. These affidavits are con-troverted by summary judgment evidence presented by the Pairetts. The Pairetts presented summary judgment evidence that on the Owner's Disclosure Statement, Defendants denied knowledge of any foundation problems; that the Pairetts relied on these assurances in agreeing to purchase the residence; that the cracks in the foundation had probably been there since the residence was built and were obvious enough that a person familiar with the house would have known about them; and that shortly after the sale, appellee Gutierrez, without solicitation, inquired about foundation problems. The foregoing evidence is sufficient to raise a fact issue as to whether Defendants knew of the defects and induced the Pairetts into purchasing the residence through fraudulent representation or concealment of information. We conclude that a material fact issue remains as to whether Defendants were aware of the defect and thus owed the buyers a duty to disclose.

■ Moreover, summary judgment may be based on the uncontroverted affidavit of an interested witness only if the evidence is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. Tex.R. Civ. P. 166a(c); *Trico Technologies Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). Even if they had been "uncontroverted," Defendants' affidavits are not of such character. As previously stated, the Pairetts presented evidence raising an inference that Defendants did indeed know of the defects in the foundation prior to the sale. In addition, the crucial evidence in Defendants' affidavits—their subjective awareness of the foundation defect—could not have been readily controverted. At the very least, therefore, the summary judgment evidence as a whole prevents Defendants' affidavits from satisfying the standard by which a summary judgment may be granted on the basis of the testimony of an interested witness. *See* Tex.R. Civ. P. 166a(c).

Similarly, Defendants have failed to show conclusively that the defect was discoverable by the Pairetts through ordinary care and due diligence. The Pairetts presented evidence that neither buyer knew of the founda-

tion defects prior to purchase. Though they did not exercise their right to inspect the house before purchase, they presented evidence that this decision was made in reliance on the sellers' assurances that there were no known problems. Accordingly, the Pairetts' failure to have an inspection done is not conclusive. In addition, although the Pairetts' expert testified that the crack in the foundation could have been observed by anyone, this evidence is not so strong as to prove that the defect was open and obvious as a matter of law.

### B. Claims of Conspiracy

■ In Texas, a civil conspiracy is a combination of two or more persons joining to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968). Without knowledge of the object and purpose of a conspiracy, there can be no meeting of the minds and thus no conspiracy. *Schlumberger*, 435 S.W.2d at 857. As discussed above, however, there is evidence in the summary judgment record that raises an inference that Defendants were aware of the foundation defects. While a jury would not be *required* to believe that evidence or draw that inference, they would be *permitted* to. Accordingly, such evidence is not enough for summary judgment. Thus, Defendants have not shown that the civil conspiracy claim must fail as a matter of law.

### C. The Purchase of the Property "As Is"

■ Proof of causation is essential to each of the Pairetts' claims. By purchasing a residence "as is," a buyer agrees to make his own evaluation of the bargain and to accept the risk that he could be wrong. *Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995). This evaluation on the part of the buyer constitutes a new and independent basis for the purchase, one that disavows any reliance upon representations made by the seller. *Id.* However, a buyer is not bound by an "as is" agreement if proof of fraudulent misrepre-

sentation or concealment of information by the seller is shown. *Id.* at 162. In such a case, the buyer is not precluded from recovery against the seller. *Id.*

■ We believe the contract by which the Pairetts purchased the home did not conclusively negate causation. The *Prudential* case, on which Defendants rely, is distinguishable. There, the relevant contract provision clearly and unambiguously demonstrated the buyer's agreement to rely solely on his own inspection:

> As a material part of the consideration for this Agreement, Seller and Purchaser agree that Purchaser is taking the Property "AS IS" with any and all latent and patent defects and that there is no warranty by Seller that the Property is fit for a particular purpose. Purchaser acknowledges that it is not relying upon any representation, statement or other assertion with respect to the Property condition, but is relying upon its examination of the Property. Purchaser takes the Property under the express understanding there are no express or implied warranties (except for limited warranties of title set forth in the closing documents).

*Id.* at 160.

In the present case, on the other hand, the parties' contract does not contain such unambiguous language. The relevant contract provision states:

> **7. PROPERTY CONDITION:** (Check one box only)
>
> ☐ A. Buyer accepts the Property in its present condition subject to lender required repairs and the following repairs:_____
> _____
>
> ☑ B. Buyer accepts the Property in its present condition subject to lender required repairs and those repairs designated by Buyer pursuant to the attached Property Condition Addendum.

The Property Condition Addendum informed the Pairetts that they could, at their own expense, have an inspection done of the foundation and numerous other structural and mechanical systems and further stated: "Failure of Buyer to furnish written inspec-

tion reports and to designate the repairs to which Buyer is entitled by this contract within the times specified below shall be deemed a waiver of Buyer's repair rights." Finally, the Property Condition Addendum stated that "Seller shall only be responsible for treatment and repairs specifically designated or required by Buyer in accordance with this addendum, subject to the provisions of Paragraph 7 of this contract."

In evaluating whether this contract is an "as is" contract that conclusively precludes the Pairetts from showing any reliance or causation, we find the San Antonio Court of Appeals' opinion in *Smith v. Levine,* 911 S.W.2d 427, 430–33 (Tex.App.—San Antonio 1995, writ denied), to be persuasive. In *Smith,* which also involved the sale of a house with a defective foundation, the relevant contractual provision stated:

> **PROPERTY CONDITION** (Check A or B)
>
> ☑ A. Buyer accepts the Property in its present condition, ~~subject only to any lender required repairs and~~ *"AS IS"*
>
> ☐ B. Buyer requires all inspections and repairs required by any lender and the Property Condition Addendum attached hereto.

*Id.* at 431. The court in *Smith* compared the terms in the contract before it with the terms in the contract before the supreme court in *Prudential* and concluded that *Prudential* was not controlling. Of particular importance to the court were the facts that the "as is" provision in the contract before it was silent on the reliance issue and that the record contained evidence that the defendants knew the foundation was defective but made affirmative misrepresentations regarding its condition:

> As noted by the supreme court, the distinction between *Weitzel* [*v. Barnes,* 691 S.W.2d 598 (Tex.1985)] and *Prudential* is whether the particular "as is" clause at issue negates producing cause as a matter of law in the circumstances presented. *See Prudential,* 896 S.W.2d at 164.

In short, we believe the "as is" clause in this case, like that in *Weitzel* and unlike that in *Prudential,* does not as a matter of law negate causation because the Smiths knowingly concealed material information and made affirmative oral misrepresentations to the Levines regarding the condition of the house; the Levines did not expressly and in writing disclaim their reliance upon these oral representations; and the Levines testified that, in purchasing the house, they did in fact rely upon the Smiths' oral misrepresentations.

*Smith,* 911 S.W.2d at 433.

The circumstances in the present case are remarkably similar to those in *Smith.* First, the present contract is silent on the issue of reliance; indeed, it does not contain the phrase "as is" at all in relation to the foundation or overall condition of the house.[2] Next, as discussed above, the summary judgment evidence raises an inference that Defendants were in fact aware of problems with the foundation yet made an affirmative representation that they knew of no such problems. Finally, there is summary judgment evidence that the Pairetts relied on Defendants' representation in purchasing the house. We conclude that the summary judgment evidence does not, as a matter of law, show that the Pairetts are precluded from proving causation.

## CONCLUSION

Applying the summary judgment standards set forth above, we conclude that the Defendants failed to meet their burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Having sustained the Pairetts' sole point of error, we reverse the trial court's judgment and remand the cause to that court for further proceedings.

CARROLL, C.J., not participating.

---

**2.** In paragraph 11 of the contract, titled "Special Provisions," the parties inserted the handwritten words: "Buyer will accept Decking 'as is.'"