# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00382-CV

**Oat Note, Inc., Appellant**

**v.**

**Ampro Equities, Inc. and WCP Development, L.P., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. 99-05424, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING

## O P I N I O N

Appellant Oat Note, Inc. appeals from a trial-court judgment granting damages and attorney's fees to appellees Ampro Equities, Inc. and WCP Development, L.P.[1] The litigation arose out of a suit filed by a third party, M&L England, L.L.C., against appellant and both appellees, regarding a piece of property that M&L England bought from Oat Note. The obligations surrounding that property were assumed by Ampro (which subsequently assigned its contractual rights and obligations to WCP) after it purchased commercial real estate from Oat Note. Ampro settled that case with M&L England for $35,000, and in the instant case sought to recoup those damages from Oat Note. A jury awarded Ampro $11,666.66 in damages from Oat Note for negligent

---

[1] In this opinion, we will refer to Ampro Equities, Inc. and WCP Development, L.P. collectively as "Ampro," except when our discussion requires us to distinguish between them. Ampro is a general partner of WCP.

misrepresentation and $23,582.50 in attorney's fees, and the trial court rendered judgment accordingly.

Oat Note appeals this judgment, contending that: (1) the trial court should not have rendered judgment against Oat Note for damages because Ampro purchased the property pursuant to a contract expressly stating it would rely on its own inspection and that the property would be conveyed "as is"; ( 2) even if Ampro was entitled to damages for negligent misrepresentation, the trial court should not have rendered judgment granting attorney's fees because there is no statute or contractual agreement authorizing them in this dispute; and (3) the trial court should have granted declaratory judgment in favor of Oat Note, declaring the "as is" provisions of the contract determinative of the dispute and awarding Oat Note reasonable attorney's fees. We will affirm the trial court's judgment on issues one and three and reverse and render judgment on issue two.

## FACTUAL AND PROCEDURAL BACKGROUND

Oat Note entered into a contract in January 1997 to sell a piece of land in a commercial subdivision to M&L England for use as a gymnastics training center. This contract contained a provision requiring M&L England to improve an existing low-water crossing on the property per city regulations. It further required Oat Note to construct a road leading from the highway to the low-water crossing on the land it retained adjacent to that sold to M&L England. Oat Note was obligated to finish construction on this road within sixty days after completion of the low-water crossing. M&L England completed the improvements to the low-water crossing in March 1998.

2

In July 1998, Oat Note entered into a contract with Ampro to sell four commercial lots adjacent to the lot previously sold to M&L England. Because it was later discovered that Jack Sullivan, president of Oat Note, owned two of the lots personally, the contract was redrawn as two separate contracts, which closed in October 1998. Pursuant to the purchase of this land from Oat Note, Ampro assumed the obligation to build the road within sixty days after M&L England's completion of the improvements to the low-water crossing. Although there is nothing in the contract that expressly transfers this obligation to Ampro, Ampro's amended answer and cross-claim, as well as testimony by WCP principal Steffen Waltz and real estate broker Lee Ellison, indicate that this understanding was present, and in its argument, Ampro does not dispute this fact.

Testimony at trial indicates that Sullivan was made aware of the completion of the low-water crossing both by seeing it himself while on the property and through oral communication with John England, who improved the low-water crossing and is the father of M&L England president Mark England. Nevertheless, Sullivan did not begin construction on the promised road, nor did he inform Ampro that the improvements to the low-water crossing were completed. Sullivan testified that he believed that construction was not technically considered complete under the terms of the contract until he was given a copy of the city approval of the completed project, though he never asked M&L England for such. Later, when asked by Waltz whether construction had been completed, triggering the clause, Sullivan answered that it had not because he had not received a copy of the city's approval. The contract between Oat Note and M&L England does not explicitly state that notice must be given in such a manner.

In November 1998, Waltz met with Mark England and heard his concerns regarding the building of the road. Because Waltz wished to construct other elements of the site plan before constructing the road, he did not complete it until June 1999.

One month before completion M&L England filed a lawsuit against Oat Note, Sullivan (who was subsequently dropped as an individual defendant), and Ampro, alleging breach of post-closing construction obligations. Ampro entered into a settlement agreement with M&L England, paying the company $35,000. Ampro subsequently filed a cross-claim against Oat Note and a claim against Sullivan for the entire settlement amount, claiming that fraudulent and negligent misrepresentations regarding the construction obligations resulted in the loss. Oat Note and Sullivan responded with a cross-claim against appellees for declaratory judgment, stating that the "as is" provisions in the contracts between the parties determined the dispute.

The jury found Oat Note and Sullivan liable for negligent misrepresentation, and awarded Ampro $11,666.66 in damages, plus $23,582.50 in attorney's fees. The trial court overruled Oat Note's motion for judgment notwithstanding the verdict and rendered judgment for the full amount recommended by the jury.

Oat Note appeals this judgment, contending that: (1) the trial court should not have rendered judgment against Oat Note for damages because Ampro purchased the property pursuant to a contract expressly stating it would rely on its own inspection and that the property would be conveyed "as is"; (2) even if Ampro was entitled to damages for negligent misrepresentation, the trial court should not have rendered judgment granting attorney's fees because there is no statute or contractual agreement authorizing them in this dispute; and (3) the trial court should have granted

4

declaratory judgment in favor of Oat Note, declaring the "as is" provisions of the contract determinative of the dispute and awarding Oat Note reasonable attorney's fees.

## DISCUSSION

**Standard of Review**

Oat Note does not specify under what standard it believes the trial court erred. Based on its arguments we will assume Oat Note believes the evidence in this case was legally and factually insufficient to support the judgment, and we will address the issues accordingly.

In a legal-sufficiency challenge on which the appellant did not have the burden of proof at trial, as is the case here, the appellant must demonstrate that there is no evidence to support the adverse finding. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1996). To determine the legal sufficiency of the evidence to support a judgment, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex. 1970). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Crye*, 907 S.W.2d at 499; *Moriel*, 879 SW2d at 25.

5

In determining whether the trial court ruling was supported by factually sufficient evidence, we must assess all of the evidence and may not substitute our judgment for that of the trier of fact. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). When the challenge is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment only if the challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so weak as to make the judgment clearly wrong or manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

**The Propriety of Rendering Judgment Against Oat Note**

In its first issue, Oat Note argues that the trial court should not have rendered judgment for damages for negligent misrepresentation because the property was purchased pursuant to a contract in which Ampro expressly agreed to rely upon its own inspection and investigation of the property and that the property would be conveyed "as is." The relevant clause in the contract between the two parties reads: "Buyer shall rely on its own inspection of the Property and Seller shall convey the Property As Is, Where Is, and With All Faults." Oat Note contends that the causation element required to assess damages was not present as a result of the "as is" clause.

*The Existence of Causation*

Oat Note relies on *Prudential Insurance Co. of America v. Jefferson Associates., Ltd.*, 896 S.W.2d 156 (Tex. 1995), to support its argument that an "as is" provision in a contract negates the possibility that a seller's actions can cause damages to a buyer. The supreme court held in

6

*Prudential* that when purchasing property "as is," the seller gives no assurances concerning value or condition, so the buyer is agreeing to make his own appraisal of the bargain and to accept the risk that he may be wrong. *Id.* at 161. Specifically, a valid "as is" agreement prevents a seller from being held liable if it turns out that the property sold is worth less than the price paid. *Id.* In such a case, causation of harm is impossible. *Id.* Since the buyer agrees to take the full risk as to whether or not the property is in the condition he believes it to be in, barring fraud or other intentional misrepresentation, the seller's actions cannot be the cause of the harm. *Id.*

Ampro disputes Oat Note's application of *Prudential* here, contending that the "as is" clause relates only to instances in which the value of the property is affected due to misrepresentation. Ampro does not argue that the *value* of the property was harmed by Sullivan's misrepresentation that he had not received notice that the low-water crossing was completed. Rather, it argues that Sullivan's misrepresentation led to M&L England's lawsuit, which resulted in Ampro's damages.

Ampro received notice of the low-water crossing's completion in the fall of 1998, but did not believe the sixty-day time frame to be of great importance to M&L England. As a result of this, Waltz testified, Ampro decided to finish construction on the neighboring buildings before beginning the road so as to not risk damage to the road from heavy machinery. Ampro does not dispute that this led it to be in default of its obligation to M&L England, but asserts that had it known of the animosity that had built between M&L England and Sullivan it would have begun construction of the road in a timely manner. Because of Sullivan's misrepresentations, Waltz testified, Ampro failed to understand M&L England's frustration and animosity. In this way, the misrepresentation

7

affected the relationship between Ampro and M&L England and caused M&L England to file a lawsuit.

Because of this, Ampro believes that Sullivan's actions on behalf of Oat Note legally caused the harm despite the "as is" provision. Ampro argues that because its damages stemmed from what it terms an avoidable lawsuit and not a lower property value than it had bargained for, Sullivan's misrepresentation concerning the low-water crossing did in fact cause the loss. As support, Ampro cites *Pairett v. Gutierrez*, 969 S.W.2d 512 (Tex. App.—Austin 1998, pet. denied), in which this Court stated that the buyer of a home was not bound by an "as is" clause because the contract did not contain clear and unambiguous "as is" language demonstrating the buyer's agreement to rely solely on his own inspection. *Id.* at 516, 517. Also, there was evidence in that case that the seller made affirmative misrepresentations concerning a crack in the foundation. *Id.* at 517. In reaching our conclusion, we relied upon the *Prudential* court's caution that an "as is" provision is not binding if proof of fraudulent misrepresentation or concealment of information is shown. *Id.* at 516 (citing *Prudential*, 896 S.W.2d at 162).

In *Pairett*, the contract between the parties did not clearly and unambiguously demonstrate the buyer's agreement to rely solely on his own inspection of the property conveyed. *Id.* The contracts in the instant case, however, specifically state that Ampro "shall rely on its own inspection and investigation of the Property." Furthermore, the jury in this case did not find fraudulent misrepresentation concerning the condition of the property. We therefore cannot draw a direct parallel between the two cases as Ampro urges.

8

Still, we hold that as a matter of law the "as is" clause is not determinative in this case because the harm alleged was not a result of factors that fall under the agreement. Ampro's damages were caused by Sullivan's misrepresentation of whether or not M&L England believed the low-water crossing was complete, not by a disagreement over the value of the property itself or any other assertion about the condition of the property conveyed. Thus, we hold that the "as is" clause did not prevent Ampro from proving causation in its negligent misrepresentation claim.

The evidence is adequate to support a finding that Oat Note's misrepresentation caused Ampro's damages based on the theory under which Ampro alleged the harm occurred. Sullivan stated that notice from the city acknowledging the proper completion of the low-water crossing was required before construction of the road could begin. He further stated that he had received no notice regarding the completion of the project, despite testimony by John England that he had personally informed Sullivan of this fact by phone. Waltz testified that had he known how long M&L England had been trying to get the road completed he would have made the road construction a priority and could have prevented the lawsuit that resulted in his damages. While evidence and testimony existed supporting both parties' views of the events, the jury resolved the conflicting evidence, and that evidence is sufficient to support the jury's findings.

*Damages for Negligent Misrepresentation*

While *Prudential* states that a buyer will not be bound by an "as is" agreement when damages are a result of fraudulent misrepresentation, Oat Note stresses that the jury found Oat Note's behavior to be negligent, not fraudulent. *Prudential*, 896 S.W.2d at 163. Oat Note further argues that even if negligent misrepresentation did occur, such a finding would not allow for

9

judgment against Oat Note because the *Prudential* court specifically disallowed damages caused by negligence rather than fraud. *Id.* at 161.

Ampro disputes Oat Note's contention that damages are improper when only negligent misrepresentation is found. The Texas Supreme Court has adopted the Restatement (Second) of Torts regarding damages for negligent misrepresentation, which states that "the damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the representation is the legal cause, including . . . pecuniary loss otherwise suffered as a consequence of the plaintiff's reliance on the misrepresentation." *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663-64 (Tex. 1998). Unlike with fraud, in order to collect damages based on a claim of negligent misrepresentation the buyer must prove that an injury occurred independent from any benefit-of-the-bargain measures of recovery. *Id.*

In *Prudential*, negligence damages were not allowed to overcome the "as is" contract language because the harm was caused by the unknown presence of asbestos in the building sold, a fact that significantly reduced the value of the property. 896 S.W.2d at 161. In the current case, we have already determined that Ampro's negligent misrepresentation claim is not affected by the "as is" clause. The negligent misrepresentation harmed Ampro because it led to the filing of a lawsuit against it, not because it resulted in Ampro's getting less than it expected to be the benefit of its bargain in the real estate deal. Accordingly, Oat Note's actions were the legal cause of the harm, and so the damages meet the requirement that they stem from an injury independent of the relative benefit of the bargain itself. *D.S.A.*, 973 S.W.2d at 663-64. Damages in this case are proper.

10

We therefore hold that despite the presence of an "as is" clause in the contract, Oat Note's actions can be found to have caused Ampro's harm and that damages based on negligent misrepresentation were proper in this case. We overrule Oat Note's first issue.

**Declaratory Judgment**

In its third issue, Oat Note argues that the "as is" provisions of the real estate contract were determinative of the dispute, and therefore the trial court should have granted declaratory judgment in favor of Oat Note and awarded reasonable attorney's fees.

As has been discussed above, the "as is" provisions of this contract were not in fact determinative of the dispute. We therefore hold that the trial court was correct in refusing to grant a declaratory judgment and overrule Oat Note's third issue.

**Award of Attorney's Fees to Ampro**

Oat Note's second issue pertains to the trial court's award of attorney's fees to Ampro. Oat Note argues that there is no statutory or contractual basis for awarding attorney's fees for negligent misrepresentation, and therefore they should not have been assessed.

In Texas, attorney's fees may not be recovered from an opposing party unless they are authorized by statute or by contract between the parties. *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996). No statute allows attorney's fees to be awarded for negligent misrepresentation, so they must be authorized by the contracts for the trial court's award to be proper. The contracts between Oat Note and Ampro contained the following clause:

11

> If either party to this Contract defaults in the performance required hereunder, and the non-defaulting party employs an attorney to enforce the terms hereof, such non-defaulting party shall be entitled to reasonable attorney's fees from the defaulting party if such non-defaulting party prevails in any litigation to enforce this Contract.

Since Ampro does not allege default in the performance of the contracts in its suit, Oat Note contends, there is no contractual basis to award attorney's fees to Ampro in this case.

Oat Note points out that, although the original contract between the parties allowed attorney's fees to be awarded for actions "related to" the contract, the final contracts signed by the parties eliminated this broad language. When the contract had to be split and redrawn following the discovery that Sullivan owned two of the four lots being sold (rather than Oat Note as the contract stated), the standard Texas Association of Realtors contract was replaced by contracts written by Oat Note. These final contracts explicitly stated that any prior agreements between the parties were superseded by the new documents.

Oat Note notes that the trial court handed counsel for both parties a copy of *Polk v. St. Angelo*, No. 03-01-00356-CV, 2002 Tex. App. LEXIS 3934 (Tex. App.—Austin May 31, 2002, pet. denied) (not designated for publication), during the charge conference, and presumes that case was the basis for the award. Oat Note believes that *Polk* does not apply because, unlike the contracts between Oat Note and Ampro, the *Polk* contract broadly provided for costs and attorney's fees for the prevailing party "in any legal proceeding brought under or with relation to this contract." *Id.* at *6.

Ampro argues that even if the final contracts superseded the original, the same terms and obligations relating to the misrepresentation are present in all of the contracts. Because the

12

obligations with regard to the construction of the road were present in all contracts, Ampro contends, attorney's fees were supported by the evidence since they arose out of the contracts. Ampro further asserts that contract terms should be construed against the drafter of the documents, and that under such a standard the contracts between the two parties allow for attorney's fees to be awarded in this case. *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 115 (Tex. 1979).

Despite Ampro's assertions that all the contracts contained similar obligations and terms with regard to the construction of the road, the language in the final contracts clearly states that the final contracts are intended to supersede all prior agreements. While Ampro is correct that a contract is normally construed against its author, this still must be done in such a manner as to reach a reasonable result consistent with the apparent intent of the parties. *See id*. Based on the wording of the final contracts signed by the parties, there is no reason to believe that it was the parties' intent to enforce the original contract, or to allow for the attorney's fees clause of the original contract to control in the event of litigation. The relevant clause in this case is the one found in the final contracts.

This clause clearly states that attorney's fees should be awarded "if either party defaults in the performance required" under the contracts, and there was no claim by Ampro that such a default did occur. The jury found only that Oat Note made negligent misrepresentations to Ampro, not that there was any breach of the contracts or that any term of the contracts was unfulfilled. While in *Polk* and other cases attorney's fees have been allowed based on negligence and misrepresentation because those claims *related to* the contract between the parties, such a conclusion cannot be reached here. *See Polk*, 2002 Tex. App. LEXIS 3934, at *8; *Dickerson v. Trinity-W. Title Co.*, 985 S.W.2d 687, 692-93 (Tex. App.—Fort Worth 1999, pet. denied) (analyzing

13

identical contract language to *Polk*, and holding that party was entitled to attorney's fees because claim for negligence and misrepresentation was "related to" contract). Any reasonable reading of the clause in question shows that the intent of the parties was to allow for attorney's fees in a case where one party has defaulted. Even if the negligent misrepresentation found by the jury in this case related to the contracts, the contracts do not allow attorney's fees for such a claim. Because there was no other clause in the contracts allowing the award of attorney's fees for negligent misrepresentation and there is no statute allowing for such, there was no basis for their award.

There being no evidence that it was the intent of the parties to allow for the award of attorney's fees to the prevailing party in a suit claiming negligent misrepresentation, we hold that the trial court erred in awarding Ampro $23,582.50 in attorney's fees and sustain Oat Note's second issue.

**Award of Attorney's Fees to Ampro for Successful Appeal**

In its sole cross-point, Ampro asserts that the jury's finding that no attorney's fees should be awarded for a successfully defended appeal to this Court and the Texas Supreme Court was against the great weight and preponderance of the evidence. Ampro argues that because attorney's fees were found to be proper by the trial court and the amount of such fees for future appeals was uncontroverted at trial, the choice the jury made to award no attorney's fees in the event of appeal contradicted all evidence on record.

Because we have held that no attorney's fees should have been awarded in this case because they are authorized by neither statute nor the contracts between the parties, we overrule Ampro's cross point.

14

**CONCLUSION**

We conclude that the trial court did not err in rendering judgment against Oat Note for damages for negligent misrepresentation or in not granting declaratory judgment in favor of Oat Note, but that it did err in awarding attorney's fees to Ampro. We further conclude that Ampro is not entitled to attorney's fees for the successful appeal of this case. Accordingly, we affirm the trial court's award of damages, reverse the trial court's award of attorney's fees, and render judgment that Ampro take nothing by its claim for attorney's fees.

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed in Part; Reversed and Rendered in Part

Filed:   July 15, 2004