TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00461-CV







Carol Sims, Appellant



v.



Century 21 Capital Team, Inc. and Thelma Stark Sorgman, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. GN500412, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING







M E M O R A N D U M O P I N I O N



 Carol Sims sued Century 21 Capital Team, Inc., and Thelma Stark Sorgman, one of
its real estate agents (together "appellees"), for violations of the Deceptive Trade Practices Act
(DTPA), fraud, and misrepresentation after Sims purchased real property that, she alleges, contains
abandoned underground mines. See Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2002 & Supp.
2005) (DTPA); Tex. Bus. & Com. Code Ann. § 27.01 (West 2002) (fraud). The trial court granted
summary judgment in favor of appellees. (1) In two issues, Sims asserts that the summary judgment
evidence does not entitle appellees to judgment as a matter of law or conclusively negate the
existence of a genuine issue of material fact. We affirm the judgment. 


FACTUAL AND PROCEDURAL BACKGROUND

 On December 12, 2001, Sims executed a contract to purchase real property located
in Bastrop County from James Pilchiek. The contract, a standard residential real estate contract form
promulgated by the Texas Real Estate Commission (TREC), contained section seven, titled,
"property condition." Section 7D stated, 


ACCEPTANCE OF PROPERTY CONDITION: (check one box only):


 [x] (1) In addition to any earnest money deposited with escrow agent, Buyer has
paid seller $ 100 (the "Option Fee") for the unrestricted right to terminate
this contract by giving notice of termination to Seller within 10 days after
the effective date of this contract. If Buyer gives notice of termination
within the time specified, the Option Fee will not be refunded, however, any
earnest money will be refunded to Buyer. If Buyer does not give notice of
termination within the time specified, Buyer will be deemed to have
accepted the Property in its current condition and the Option Fee [x] will
. . . be credited to the Sales Price at closing. 


 [x] (2) Buyer accepts the Property in its present condition; provided Seller, at
Seller's expense shall complete the following repairs and treatment: [none
listed].

 


(Emphasis added.) According to Sorgman's deposition testimony, Sims's real estate agent checked
both boxes, despite the form's instructions to the contrary, and typed the figures into the blank spaces
in section 7D as shown.

 In her petition, Sims stated that after purchasing the property, she discovered
underground mines. She alleged that appellees did not disclose to her that there were underground
mines located on the property, and that she would not have purchased the property had she known
of their existence. She further alleged that these structures reduce the value of the property and
present a risk to her and her family.

 Appellees moved for summary judgment on the grounds that Sims purchased the
property "as is." Appellees attached the contract and the affidavits of Mike Gharbi, the owner of
Century 21, and Sorgman. In response to appellees' motion, Sims presented excerpts of the
deposition testimony of Gharbi and Sorgman.

 The trial court granted summary judgment in favor of appellees. The order did not
specify the grounds on which the court relied. Sims perfected this appeal.


ANALYSIS

 In her first issue, Sims contends that the trial court erred in granting summary
judgment because material fact issues exist concerning whether she knowingly agreed to purchase
the property "as is." In her second issue, Sims contends that appellees' affidavits were not
competent summary judgment proof. 

 Appellees respond that Sims's agreement to buy the property "as is" conclusively
negated the reliance element that is essential to recovery on all of her theories. Citing Prudential
Insurance Company of America v. Jefferson Associates, Ltd., appellees contend that when Sims
purchased the residence "as is," she agreed to make her own evaluation of the bargain and accepted
the risk that she may have been wrong. 896 S.W.2d 156, 161 (Tex. 1995). Appellees further
respond that Sorgman's uncontroverted affidavit was competent summary judgment evidence
because it could have been effectively countered by opposing evidence. See Trico Techs. Corp. v.
Montiel, 949 S.W.2d 308, 310 (Tex. 1997).


Standard of Review 

 The standards for reviewing a motion for summary judgment are well established: 
(1) the movants for summary judgment have the burden of showing that no genuine issue of material 

fact exists and that they are entitled to judgment as a matter of law; (2) in deciding whether there is
a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant
will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in the non-movant's favor. Nixon v. Mr. Prop. Mgmt. Co. 690 S.W.2d 546,
548-49 (Tex. 1985); see Tex. R. Civ. P. 166a(c).


"In the current condition" 

 We construe the TREC-promulgated contract used here, in which Sims agreed to
accept the property "in its current condition," as binding Sims to purchase the property "as is." (2) 
When evaluating a contract, we look to its language to ascertain and give effect to the intentions of
the parties as expressed in the instrument. See Lenape Res. Corp. v. Tennessee Gas Pipeline Co.,
925 S.W.2d 565, 574 (Tex. 1996). We construe contracts from a "utilitarian standpoint" bearing in
mind the particular business activity sought to be served. Frost Nat'l Bank v. L&F Distribs., 165
S.W.3d 310, 311 (Tex. 2005). 

 In Texas, a real estate licensee is bound to use TREC form contracts in most
transactions, 22 Tex. Admin. Code § 537.11(b) (2006), and is prohibited from giving advice or
opinions as to the legal effect of any of its provisions, id. § 537.11(c). In this context, "in its current
condition" is a plain English equivalent to "as is," and as such allows this provision of the contract
to be understood by those who must comply with it. See Black's Law Dictionary 108-09 (7th ed.
1999) ("as is" defined as "In the existing condition without modification."). Our analysis is
supported by the determination of our sister court in Waco that buyers purchased property "as is"
when they signed an earnest money contract, promulgated by the TREC, wherein they bound
themselves to accept the property "in its present condition." Larsen v. Langford, 41 S.W.3d 245,
251 (Tex. App.--Waco 2001, pet. denied); see also Fletcher v. Edwards, 26 S.W.3d 66, 75 (Tex.
App.--Waco 2000, pet. denied) (earnest money contract stated that the buyers accepted the property
"in its present condition"). Our holding is consistent with Texas law recognizing that "'as is,' 'with
all faults,' or other language that 'in common understanding calls the buyer's attention to the
exclusion of warranties and makes plain that there is no implied warranty'" may be used to disclaim
warranties. See Tex. Bus. & Com. Code Ann. § 2.316 (West 1994) (emphasis added); Turner v.
Conrad, 618 S.W.2d 850, 853 (Tex. Civ. App.--Fort Worth 1981, writ denied) (involving resale of
real estate); see also Prudential, 896 S.W.2d at 161 (explaining the "as is" provision of a real estate
contract by referencing section 2.316 of the Texas Business and Commerce Code). 


Totality of the Circumstances

 Sims contends that the "as is" clause is not binding because the clause was a boiler-plate provision and was not an important part of the basis of the bargain. See Prudential, 896
S.W.2d at 162. In Prudential, the supreme court recognized that aspects of a transaction may make 

an "as is" agreement unenforceable, and stated that "the nature of the transaction and the totality of
the circumstances surrounding the agreement must be considered" when determining if an "as is"
agreement is enforceable. Id. The supreme court further stated, "Where the 'as is' clause is an
important part of the basis of the bargain, not an incidental or 'boiler-plate' provision, and is entered
into by parties of relatively equal bargaining position, a buyer's affirmation and agreement that he
is not relying on representations by the seller should be given effect." Id. Although Prudential
involved commercial property, courts have applied the Prudential analysis to residential property. 
See Bynum v. Prudential Residential Servs. Ltd. P'ship, 129 S.W.3d 781, 792 (Tex. App.--Houston
[1st Dist.] 2004, pet. denied).

 We find that this "as is" clause meets the requirements of Prudential. See Prudential,
896 S.W.2d at 162. Section 7D(1) of the TREC contract has two blank spaces in its text
corresponding with the amount of the option fee and the number of days that the buyer has the
"unrestricted right to terminate this contract by giving notice of termination to the Seller." The
numbers "100.00" and "10" were typed into the first and second blank spaces, respectively. These
terms are by their nature negotiable, and not boilerplate contractual terms. See Black's Law
Dictionary 167 (7th ed. 1999) ("boilerplate" defined as "Fixed or standardized contractual language
that the proposing party views as relatively nonnegotiable."). Further, Gharbi and Sorgman stated
in their affidavits that Sims employed her own real estate agent, and Sorgman testified in her
deposition that Sims's agent chose the two numbers and typed them into section 7D(1). We,
therefore, determine that there is no material fact issue about whether the contract should be enforced
under the Prudential test. (3)


Fraudulent Concealment 

 Relying on this Court's opinion in Pairett v. Gutierrez, 969 S.W.2d 512, 517 (Tex.
App.--Austin 1998, pet. denied), Sims contends that a material fact issue exists about whether she
disavowed her reliance on appellees' alleged fraudulent failure to disclose the existence of the
subsurface mines. Sims argues that Pairett stands for the proposition that a buyer's agreement to
accept the property "in its present condition" does not disavow the buyer's reliance on the seller's
misrepresentations.

 In Pairett, the buyers purchased a house "in its present condition" and received an
owner disclosure statement, signed by the sellers, stating that the sellers were not aware of defects
in the foundation. Id. at 514. Although the buyers were allowed to inspect and evaluate the home,
they chose not to and waived repair rights by doing so. Id. Shortly after closing, the buyers
discovered a crack in the foundation. Id. The buyers sued the sellers for violations of the DTPA,
fraud, and misrepresentation, and the trial court granted summary judgment in favor of sellers. Id.
at 513-14. This Court reversed and remanded for further proceedings, finding that the summary
judgment evidence, consisting of controverting affidavits, raised an inference that the sellers were
aware of problems with the foundation yet made an affirmative representation that they did not know
of the problems, and that the buyers relied on the sellers' representations in purchasing the house. 
Id. at 517.

 Pairett is not dispositive of the issues in the instant case because the summary
judgment evidence here does not raise an issue of fraudulent concealment by appellees--the real
estate broker and agent. A seller has no duty to disclose facts she does not know, nor is a seller
liable for failing to disclose what she only should have known. Prudential, 896 S.W.2d at 162. 
Here, the seller's agent, Sorgman, stated in her affidavit, "I have never had any knowledge regarding
the existence of any subsurface structures in the property that was sold to Carol Sims by our client. 
Indeed, to the present day I don't know if subsurface structures are in the property." In Sorgman's
deposition testimony she describes her interactions with Sims, from Sims's first telephone call to
Sorgman's receipt of her commission upon the completion of the sale, without mentioning assistance
from other agents, except to note that at one point another agent took a telephone message from Sims
and relayed the information to Sorgman. Sorgman's signature appears on the last page of the
contract as the only "listing associate" and "seller's agent" and on the mediation addendum on behalf
of Century 21. Thus, we find that the summary judgment evidence does not raise an issue of
fraudulent concealment.

 We overrule Sims's first issue.


Summary Judgment Evidence

 In her second issue, Sims contends that the statements in appellees' affidavits
concerning their subjective awareness of the underground mines are not competent summary
judgment proof because they are self-serving, cannot be readily controverted, and involve matters
of credibility. Sims further contends that appellees' affidavits contain improper legal opinions. 
Summary judgment based on the uncontroverted affidavit of an interested witness is proper if the
evidence is clear, positive, direct, otherwise credible, free from contradictions and could have been
readily controverted. Trico Techs. Corp., 949 S.W.2d at 310; see also Tex. R. Civ. P. 166a(c). 
"'Could have been readily controverted' does not mean that the summary judgment evidence could
have been easily and conveniently rebutted, but rather indicates that the testimony could have been
effectively countered by opposing evidence." Trico Techs. Corp., 949 S.W.2d at 310. 

 Sims complains that Sorgman's affidavit testimony that "I have never had any
knowledge regarding the existence of any subsurface structures in the property that was sold to Carol
Sims by our client" was improper summary judgment evidence. We disagree. Sorgman's statement
could have been readily controverted by evidence that someone told Sorgman about the condition
or she otherwise had reason to be aware of the condition. Sims made no attempt to controvert the
affidavit through deposition testimony, interrogatories, or other discovery. We conclude that the
statement was competent summary judgment evidence. 

 Sims also complains that Gharbi's affidavit testimony that "No realtor sponsored by
me has particular knowledge of subsurface structures or underground mines" was improper summary
judgment evidence. We agree with the trial court that this statement lacks foundation, and find that
the trial court properly disallowed it. 

 As to Sims's contention that appellees' affidavits contain improper legal opinions,
to the effect that Sims had the duty to inspect because of the "as is" nature of the contract, we find
that Sims waived that complaint by failing to object at the trial court and obtain a ruling. See
Archambault v. Archambault, 846 S.W.2d 359, 361 (Tex. App.--Houston [14th Dist.] 1992, no
writ); see also Nugent v. Pilgrim's Pride Corp., 30 S.W.3d 562, 567 (Tex. App.--Texarkana 2000,
pet. denied).

 We overrule Sims's second issue.


CONCLUSION

 Appellees met their burden of showing that no genuine issue of material fact existed
and that they were entitled to judgment as a matter of law, and we conclude that the trial court
properly granted summary judgment in their favor. Having overruled Sims's two issues on appeal,
we affirm the trial court's summary judgment.



 _________________________________________ Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: September 8, 2006
1. Sims's action against the seller, James Pilchiek, was severed after the trial court granted
summary judgment as to the appellees, thereby making the trial court's judgment final and
appealable.
2. Although Sims contends in a footnote that there is some question as to which one of the
mutually exclusive paragraphs--7D(1) or 7D(2)--controls here, we do not agree. Sorgman testified

that even though Sims's real estate agent checked both boxes, despite the form's instructions to the
contrary, the Pilchieks received $100, and this allowed Sims ten days to change her mind. Further,
Sims's response to appellees' motion for summary judgment states, "The closing documents suggest
that [Sims] chose option 1 rather than option 2," and includes as evidence a settlement statement that
reflects payment by Sims of the $100 option fee.
3. Although Sims complains that there is an inconsistency between the affidavits and
deposition testimony of Sorgman and Gharbi, this does not create a material fact issue. In their
affidavits, both Sorgman and Gharbi state that the reduction of the price of the property from
$142,000 to $132,000 "indicates the active participation by the buyer and her agent in fashioning the
terms of the contract." However, in his deposition testimony, Gharbi states that the reduction in the
sales price happened without the input of Sims and her agent. In Sorgman's deposition testimony
she states that the price reduction occurred before Sims became interested in the property. Any
perceived inconsistency regarding the sales price reduction is not relevant to the "as is" issue that
Sims challenges on appeal.