# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-05-00461-CV
===============


**Carol Sims, Appellant**

**v.**

**Century 21 Capital Team, Inc. and Thelma Stark Sorgman, Appellees**

=========================================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GN500412, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING
=========================================================================


### M E M O R A N D U M   O P I N I O N


Carol Sims sued Century 21 Capital Team, Inc., and Thelma Stark Sorgman, one of

its real estate agents (together "appellees"), for violations of the Deceptive Trade Practices Act

(DTPA), fraud, and misrepresentation after Sims purchased real property that, she alleges, contains

abandoned underground mines. *See* Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2002 & Supp.

2005) (DTPA); Tex. Bus. & Com. Code Ann. § 27.01 (West 2002) (fraud). The trial court granted

summary judgment in favor of appellees.[1] In two issues, Sims asserts that the summary judgment

---

[1] Sims's action against the seller, James Pilchiek, was severed after the trial court granted summary judgment as to the appellees, thereby making the trial court's judgment final and appealable.

evidence does not entitle appellees to judgment as a matter of law or conclusively negate the existence of a genuine issue of material fact. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 12, 2001, Sims executed a contract to purchase real property located in Bastrop County from James Pilchiek. The contract, a standard residential real estate contract form promulgated by the Texas Real Estate Commission (TREC), contained section seven, titled, "property condition." Section 7D stated,

> ACCEPTANCE OF PROPERTY CONDITION: (check one box only):
>
> [x] (1) In addition to any earnest money deposited with escrow agent, Buyer has paid seller $ __100__ (the "Option Fee") for the unrestricted right to terminate this contract by giving notice of termination to Seller within __10__ days after the effective date of this contract. If Buyer gives notice of termination within the time specified, the Option Fee will not be refunded, however, any earnest money will be refunded to Buyer. If Buyer does not give notice of termination within the time specified, *Buyer will be deemed to have accepted the Property in its current condition* and the Option Fee [x] will . . . be credited to the Sales Price at closing.
>
> [x] (2) Buyer accepts the Property in its present condition; provided Seller, at Seller's expense shall complete the following repairs and treatment: [none listed].

(Emphasis added.) According to Sorgman's deposition testimony, Sims's real estate agent checked both boxes, despite the form's instructions to the contrary, and typed the figures into the blank spaces in section 7D as shown.

In her petition, Sims stated that after purchasing the property, she discovered underground mines. She alleged that appellees did not disclose to her that there were underground

2

mines located on the property, and that she would not have purchased the property had she known of their existence. She further alleged that these structures reduce the value of the property and present a risk to her and her family.

Appellees moved for summary judgment on the grounds that Sims purchased the property "as is." Appellees attached the contract and the affidavits of Mike Gharbi, the owner of Century 21, and Sorgman. In response to appellees' motion, Sims presented excerpts of the deposition testimony of Gharbi and Sorgman.

The trial court granted summary judgment in favor of appellees. The order did not specify the grounds on which the court relied. Sims perfected this appeal.

## ANALYSIS

In her first issue, Sims contends that the trial court erred in granting summary judgment because material fact issues exist concerning whether she knowingly agreed to purchase the property "as is." In her second issue, Sims contends that appellees' affidavits were not competent summary judgment proof.

Appellees respond that Sims's agreement to buy the property "as is" conclusively negated the reliance element that is essential to recovery on all of her theories. Citing *Prudential Insurance Company of America v. Jefferson Associates, Ltd.*, appellees contend that when Sims purchased the residence "as is," she agreed to make her own evaluation of the bargain and accepted the risk that she may have been wrong. 896 S.W.2d 156, 161 (Tex. 1995). Appellees further respond that Sorgman's uncontroverted affidavit was competent summary judgment evidence

3

because it could have been effectively countered by opposing evidence. *See Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997).

### *Standard of Review*

The standards for reviewing a motion for summary judgment are well established: (1) the movants for summary judgment have the burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co.* 690 S.W.2d 546, 548-49 (Tex. 1985); *see* Tex. R. Civ. P. 166a(c).

### *"In the current condition"*

We construe the TREC-promulgated contract used here, in which Sims agreed to accept the property "in its current condition," as binding Sims to purchase the property "as is."[2] When evaluating a contract, we look to its language to ascertain and give effect to the intentions of the parties as expressed in the instrument. *See Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). We construe contracts from a "utilitarian standpoint" bearing in

---

[2] Although Sims contends in a footnote that there is some question as to which one of the mutually exclusive paragraphs—7D(1) or 7D(2)—controls here, we do not agree. Sorgman testified that even though Sims's real estate agent checked both boxes, despite the form's instructions to the contrary, the Pilchieks received $100, and this allowed Sims ten days to change her mind. Further, Sims's response to appellees' motion for summary judgment states, "The closing documents suggest that [Sims] chose option 1 rather than option 2," and includes as evidence a settlement statement that reflects payment by Sims of the $100 option fee.

4

mind the particular business activity sought to be served. *Frost Nat'l Bank v. L&F Distribs.*, 165 S.W.3d 310, 311 (Tex. 2005).

In Texas, a real estate licensee is bound to use TREC form contracts in most transactions, 22 Tex. Admin. Code § 537.11(b) (2006), and is prohibited from giving advice or opinions as to the legal effect of any of its provisions, *id.* § 537.11(c). In this context, "in its current condition" is a plain English equivalent to "as is," and as such allows this provision of the contract to be understood by those who must comply with it. *See* Black's Law Dictionary 108-09 (7th ed. 1999) ("as is" defined as "In the existing condition without modification."). Our analysis is supported by the determination of our sister court in Waco that buyers purchased property "as is" when they signed an earnest money contract, promulgated by the TREC, wherein they bound themselves to accept the property "in its present condition." *Larsen v. Langford,* 41 S.W.3d 245, 251 (Tex. App.—Waco 2001, pet. denied); *see also Fletcher v. Edwards*, 26 S.W.3d 66, 75 (Tex. App.—Waco 2000, pet. denied) (earnest money contract stated that the buyers accepted the property "in its present condition"). Our holding is consistent with Texas law recognizing that "'as is,' 'with all faults,' *or other language that 'in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty'*" may be used to disclaim warranties. *See* Tex. Bus. & Com. Code Ann. § 2.316 (West 1994) (emphasis added); *Turner v. Conrad*, 618 S.W.2d 850, 853 (Tex. Civ. App.—Fort Worth 1981, writ denied) (involving resale of real estate); *see also Prudential*, 896 S.W.2d at 161 (explaining the "as is" provision of a real estate contract by referencing section 2.316 of the Texas Business and Commerce Code).

5

***Totality of the Circumstances***

Sims contends that the "as is" clause is not binding because the clause was a boiler-plate provision and was not an important part of the basis of the bargain. *See Prudential*, 896 S.W.2d at 162. In *Prudential*, the supreme court recognized that aspects of a transaction may make an "as is" agreement unenforceable, and stated that "the nature of the transaction and the totality of the circumstances surrounding the agreement must be considered" when determining if an "as is" agreement is enforceable. *Id.* The supreme court further stated, "Where the 'as is' clause is an important part of the basis of the bargain, not an incidental or 'boiler-plate' provision, and is entered into by parties of relatively equal bargaining position, a buyer's affirmation and agreement that he is not relying on representations by the seller should be given effect." *Id.* Although *Prudential* involved commercial property, courts have applied the *Prudential* analysis to residential property. *See Bynum v. Prudential Residential Servs. Ltd. P'ship*, 129 S.W.3d 781, 792 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

We find that this "as is" clause meets the requirements of *Prudential*. *See Prudential*, 896 S.W.2d at 162. Section 7D(1) of the TREC contract has two blank spaces in its text corresponding with the amount of the option fee and the number of days that the buyer has the "unrestricted right to terminate this contract by giving notice of termination to the Seller." The numbers "100.00" and "10" were typed into the first and second blank spaces, respectively. These terms are by their nature negotiable, and not boilerplate contractual terms. *See* Black's Law Dictionary 167 (7th ed. 1999) ("boilerplate" defined as "Fixed or standardized contractual language that the proposing party views as relatively nonnegotiable."). Further, Gharbi and Sorgman stated

in their affidavits that Sims employed her own real estate agent, and Sorgman testified in her deposition that Sims's agent chose the two numbers and typed them into section 7D(1). We, therefore, determine that there is no material fact issue about whether the contract should be enforced under the *Prudential* test.[3]

### *Fraudulent Concealment*

Relying on this Court's opinion in *Pairett v. Gutierrez*, 969 S.W.2d 512, 517 (Tex. App.—Austin 1998, pet. denied), Sims contends that a material fact issue exists about whether she disavowed her reliance on appellees' alleged fraudulent failure to disclose the existence of the subsurface mines. Sims argues that *Pairett* stands for the proposition that a buyer's agreement to accept the property "in its present condition" does not disavow the buyer's reliance on the seller's misrepresentations.

In *Pairett*, the buyers purchased a house "in its present condition" and received an owner disclosure statement, signed by the sellers, stating that the sellers were not aware of defects in the foundation. *Id.* at 514. Although the buyers were allowed to inspect and evaluate the home, they chose not to and waived repair rights by doing so. *Id.* Shortly after closing, the buyers

---

[3] Although Sims complains that there is an inconsistency between the affidavits and deposition testimony of Sorgman and Gharbi, this does not create a material fact issue. In their affidavits, both Sorgman and Gharbi state that the reduction of the price of the property from $142,000 to $132,000 "indicates the active participation by the buyer and her agent in fashioning the terms of the contract." However, in his deposition testimony, Gharbi states that the reduction in the sales price happened without the input of Sims and her agent. In Sorgman's deposition testimony she states that the price reduction occurred before Sims became interested in the property. Any perceived inconsistency regarding the sales price reduction is not relevant to the "as is" issue that Sims challenges on appeal.

7

discovered a crack in the foundation. *Id.* The buyers sued the sellers for violations of the DTPA, fraud, and misrepresentation, and the trial court granted summary judgment in favor of sellers. *Id.* at 513-14. This Court reversed and remanded for further proceedings, finding that the summary judgment evidence, consisting of controverting affidavits, raised an inference that the sellers were aware of problems with the foundation yet made an affirmative representation that they did not know of the problems, and that the buyers relied on the sellers' representations in purchasing the house. *Id.* at 517.

*Pairett* is not dispositive of the issues in the instant case because the summary judgment evidence here does not raise an issue of fraudulent concealment by appellees—the real estate broker and agent. A seller has no duty to disclose facts she does not know, nor is a seller liable for failing to disclose what she only should have known. *Prudential*, 896 S.W.2d at 162. Here, the seller's agent, Sorgman, stated in her affidavit, "I have never had any knowledge regarding the existence of any subsurface structures in the property that was sold to Carol Sims by our client. Indeed, to the present day I don't know if subsurface structures are in the property." In Sorgman's deposition testimony she describes her interactions with Sims, from Sims's first telephone call to Sorgman's receipt of her commission upon the completion of the sale, without mentioning assistance from other agents, except to note that at one point another agent took a telephone message from Sims and relayed the information to Sorgman. Sorgman's signature appears on the last page of the contract as the only "listing associate" and "seller's agent" and on the mediation addendum on behalf of Century 21. Thus, we find that the summary judgment evidence does not raise an issue of fraudulent concealment.

8

We overrule Sims's first issue.

### *Summary Judgment Evidence*

In her second issue, Sims contends that the statements in appellees' affidavits concerning their subjective awareness of the underground mines are not competent summary judgment proof because they are self-serving, cannot be readily controverted, and involve matters of credibility. Sims further contends that appellees' affidavits contain improper legal opinions. Summary judgment based on the uncontroverted affidavit of an interested witness is proper if the evidence is clear, positive, direct, otherwise credible, free from contradictions and could have been readily controverted. *Trico Techs. Corp.*, 949 S.W.2d at 310; *see also* Tex. R. Civ. P. 166a(c). "'Could have been readily controverted' does not mean that the summary judgment evidence could have been easily and conveniently rebutted, but rather indicates that the testimony could have been effectively countered by opposing evidence." *Trico Techs. Corp.*, 949 S.W.2d at 310.

Sims complains that Sorgman's affidavit testimony that "I have never had any knowledge regarding the existence of any subsurface structures in the property that was sold to Carol Sims by our client" was improper summary judgment evidence. We disagree. Sorgman's statement could have been readily controverted by evidence that someone told Sorgman about the condition or she otherwise had reason to be aware of the condition. Sims made no attempt to controvert the affidavit through deposition testimony, interrogatories, or other discovery. We conclude that the statement was competent summary judgment evidence.

Sims also complains that Gharbi's affidavit testimony that "No realtor sponsored by me has particular knowledge of subsurface structures or underground mines" was improper summary

9

judgment evidence. We agree with the trial court that this statement lacks foundation, and find that the trial court properly disallowed it.

As to Sims's contention that appellees' affidavits contain improper legal opinions, to the effect that Sims had the duty to inspect because of the "as is" nature of the contract, we find that Sims waived that complaint by failing to object at the trial court and obtain a ruling. *See Archambault v. Archambault*, 846 S.W.2d 359, 361 (Tex. App.—Houston [14th Dist.] 1992, no writ); *see also Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 567 (Tex. App.—Texarkana 2000, pet. denied).

We overrule Sims's second issue.

## CONCLUSION

Appellees met their burden of showing that no genuine issue of material fact existed and that they were entitled to judgment as a matter of law, and we conclude that the trial court properly granted summary judgment in their favor. Having overruled Sims's two issues on appeal, we affirm the trial court's summary judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   September 8, 2006

10